AJAY SPORTS, INC., a Delaware corporation, Plaintiff–Appellee,

v.

Michael S. CASAZZA, Defendant–Appellant.

No. 98CA1010.

Colorado Court of Appeals.
Div. IV.

March 16, 2000.

Opinion by Judge PIERCE.*

Defendant, Michael S. Casazza, appeals a judgment entered against him on a jury ver-

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1999.

dict finding him liable to plaintiff, Ajay Sports, Inc. (ASI), for damages resulting from a creditor claim of wrongful distribution of assets. We affirm.

Ajay Leisure Products, Inc. (Ajay Leisure), a subsidiary of ASI, is a manufacturer of golf products. In 1991, Pro–Mark, Inc. (PMI), a Delaware corporation, was formed to market golf equipment manufactured by Ajay Leisure. PMI also marketed other sporting goods trademarked under the "MacGregor" brand name and manufactured by another corporation, Sports Acquisition Corporation (MacGregor). Defendant was a director of PMI and a director and officer of MacGregor.

Through a private offering of stock, PMI raised approximately $700,000. PMI and Ajay Leisure entered a purchase agreement whereby PMI paid Ajay Leisure $300,000 plus one million shares of PMI common stock for all rights to Ajay Leisure's trademarked "Double Eagle" brand name and all existing Double Eagle inventory. PMI also paid MacGregor $300,000 to acquire the right to market sporting goods under MacGregor's brand name.

It was later determined that Ajay Leisure had used the Double Eagle trademark as collateral for certain bank loans, and could not transfer the brand name as contemplated by the purchase agreement. Accordingly, the parties entered into a marketing agreement whereby PMI was granted the exclusive license to market products under the Double Eagle name. This agreement provided for PMI's previous payment of $300,000, but made no mention of the one million shares of stock that had been previously transferred.

PMI marketed products under the Double Eagle brand name for almost two years. During this time, PMI incurred marketing, administrative, and manufacturing expenses for services performed by Ajay Leisure. PMI was unsuccessful in marketing the equipment and ceased business operations by the end of 1992.

PMI then attempted to recoup the loss sustained by its original private offering investors. Because MacGregor had never allowed PMI to use the MacGregor brand name in exchange for the $300,000 it had received, defendant negotiated an agreement between PMI and MacGregor. Under the agreement, MacGregor would provide 150,000 shares of its common stock to PMI in exchange for PMI's release of all claims against MacGregor.

After the receipt of this stock, PMI's directors met and authorized the distribution of the MacGregor stock to PMI's original investors. Defendant maintained that Russell Casement was elected a director of PMI at this meeting. However, Casement denied participating in the meeting or being a director of PMI.

In addition to the MacGregor stock distribution, defendant also distributed stock options in an unrelated company to some of the original investors, and defendant received liability releases from some of these investors. It is uncontested that Ajay Leisure never received any part of PMI's distribution.

ASI initiated this lawsuit against defendant, as well as against Casement and other directors, claiming that PMI was insolvent at the time of the distribution, that the distribution was unlawful, and therefore, that the directors were personally liable to ASI for damages. ASI asserted its claims both as a creditor and a shareholder of PMI. The creditor claim was based on money owed for the services ASI claimed to have provided to PMI during the course of its operations.

Before trial, ASI settled its claims against the other directors, and only the shareholder and creditor claims against defendant and Casement proceeded to a jury trial. The parties presented conflicting evidence at trial regarding PMI's insolvency at the time of the distribution.

The jury returned a verdict in favor of ASI on the creditor claim and awarded it a total of $105,210 in actual damages and an additional $105,210 in exemplary damages, allocated as follows: (1) it found defendant liable to ASI for $70,140 in compensatory damages and the same amount in exemplary damages and (2) it found Casement liable for $35,070

in compensatory damages and the same amount in exemplary damages.

After defendant and Casement instituted this appeal, Casement satisfied the judgment against him and is no longer a party to this appeal.

## I.

Defendant first contends the trial court erred in denying his motion for a directed verdict following the presentation of ASI's case. According to defendant, ASI had no standing to bring the suit, and it was not the real party in interest. We perceive no error.

### A.

■ Standing is a jurisdictional issue that can be raised at any stage in an action, even for the first time on appeal. *Colorado Department of Public Health and Environment v. Caulk,* 969 P.2d 804 (Colo.App.1998).

■ The inquiry on standing is whether a plaintiff's complaint sufficiently alleges that plaintiff suffered an injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. *In re Application for Water Rights of Turkey Canon Ranch Limited Liability Co.,* 937 P.2d 739 (Colo.1997).

■ A plaintiff satisfies the injury-in-fact requirement by demonstrating that the challenged activity has caused, or has threatened to cause, injury to the plaintiff such that a court can say with fair assurance that there is an actual controversy proper for judicial resolution. *Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992).

■ ASI's creditor claim was premised upon defendant's alleged violation of a Delaware statute, and at trial, the court ruled that Delaware law applied to the liability issues. On appeal, the parties similarly rely on Delaware authority in addressing the liability issues.

Under the Delaware code, directors of a corporation are liable to creditors of the corporation for an illegal distribution if the directors authorize such distribution while the corporation is dissolved or insolvent. Del.

Code Ann. tit. 8, § 174(a) (1998); *see Geyer v. Ingersoll Publications Co.,* 621 A.2d 784 (Del.Ch.1992).

Here, ASI alleged that: (1) it was a creditor of PMI based on services it had provided for the company during the course of its business; (2) PMI had distributed assets while insolvent; and (3) applicable law creates a right of recovery for creditors who are not reimbursed when a corporation makes a distribution while insolvent. Therefore, as pled, ASI's complaint properly alleged an injury in fact to a legally protected interest.

Although defendant denied that ASI was a creditor of PMI, that determination was a factual question for the jury to resolve. Therefore, we conclude that ASI established standing.

### B.

C.R.C.P. 17(a) requires that "every action shall be prosecuted in the name of the real party in interest. . . ."

■ While no designated procedure exists for raising the objection that a plaintiff is not the real party in interest, such challenges generally are raised in the form of an affirmative defense under C.R.C.P. 8(c) or in a C.R.C.P. 12(b) pretrial motion. Because it may be necessary to engage in discovery to obtain sufficient facts to dispute the plaintiff's status as a real party in interest, the issue may also be raised in a pre-trial motion for summary judgment. *See* 4 S. Hyatt & S. Hess, *Colorado Civil Rules Annotated* § 17.1 at 268 (1998); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1554 (1990); *Moore's Federal Practice* § 17.12[1][a] at 17–64 (3d ed.1999). "[T]he function of the real party in interest rule is to ensure a proper res judicata effect by protecting the defendant against a subsequent suit by the person who is actually entitled to recover." 4 S. Hyatt & S. Hess, *supra,* § 17.1 at 267. *See also Alpine Associates, Inc. v. KP & R, Inc.,* 802 P.2d 1119 (Colo.App.1990).

■ The failure to raise the issue in a timely manner may constitute waiver. *See* 4 S. Hyatt & S. Hess, *supra,* § 17.1 at 268;

*see also* C. Wright, A. Miller & M. Kane, *supra,* § 1554 at 407 (issue should be raised with reasonable promptness); *Moore's Federal Practice, supra,* § 17.12[1][a] at 17–64 ("If an objection is not timely made, it will be deemed to have been waived."); *cf. Alpine Associates, Inc. v. KP & R, Inc., supra,* 802 P.2d at 1121 ("[C.R.C.P 17(a) ] requirement, when properly raised and objected to by a defendant, necessitates proof by the plaintiff, prior to resting its case, that it is that party who . . . has the right to invoke the aid of the court in order to vindicate the legal interest in question.").

■ Here, defendant asserted in his answer that ASI had failed to state a claim upon which relief could be granted under C.R.C.P. 12(b)(5) and that ASI lacked standing to bring the claim. Defendant also filed a 12(b)(5) motion before trial which was considered by the trial court, but in that motion, defendant never asserted that ASI was not the real party in interest. Rather, he claimed no relief was available because derivative suits were available only to the corporation and because officers and directors were liable only to the corporation, not shareholders or creditors. Defendant did not seek dismissal based on the real party in interest grounds until after the completion of ASI's case-in-chief.

Because we view this argument as having been waived, we perceive no abuse of discretion by the trial court in refusing to dismiss the case under C.R.C.P. 17(a). *See Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100 (5th Cir.1989)(Rule 17(a) defense waived when made as directed verdict motion at close of plaintiff's evidence); *see also Whelan v. Abell,* 953 F.2d 663 (D.C.Cir. 1992)(abuse of discretion to allow a Rule 17(a) argument as late as at the beginning of trial if the real party was prejudiced by defendant's laxness).

## II.

Defendant next contends the trial court abused its discretion by refusing to allow him to amend his answer. We disagree.

■ Leave to amend pleadings should be freely given when justice so requires.

C.R.C.P. 15(a). Trial courts may permit amendments to pleadings at any stage of the litigation process so long as undue delay does not result and other parties are not prejudiced by such amendments. A trial court's ruling with respect to a party's motion to amend a pleading will not be disturbed on appeal absent an abuse of discretion. *Nelson v. Elway,* 971 P.2d 245 (Colo.App.1998).

■ Generally, the desire to preserve a scheduled trial date alone is an insufficient reason to deny a motion to amend. However, if that consideration appears in combination with other factors, such as the absence of a reasonable excuse for the delay or previous delays, the trial court does not abuse its discretion in denying such a motion. The movant carries the burden of demonstrating lack of knowledge, mistake, inadvertence, or other reason for failing to raise the amended claim earlier. *See Polk v. Denver District Court,* 849 P.2d 23 (Colo.1993).

■ Here, defendant moved to amend his answer 62 days before trial in order to expand on previously stated defenses and add new defenses. His explanation for the delay was that his new attorney had just found evidence supporting the proposed amendments. *See Polk v. Denver District Court, supra* (acquiring new counsel does not entitle a defendant to amend his answer).

However, defendant's attempt to amend the pleadings came more than 100 days after the cut-off date for the amendment of pleadings, and the cut-off date was listed in the revised case management order to which defendant's new counsel specifically had agreed. Further, defendant had already received one continuance of the trial.

The trial court denied the motion, determining that "it was simply too late to restructure preparation [of the] case." Under these circumstances, we cannot say the trial court abused its discretion in concluding there was prejudice to the other parties and in denying the defendant's motion to amend.

## III.

Defendant next contends there was insufficient evidence to support the jury's finding that PMI was insolvent. Again, we disagree.

In reviewing a challenge to the sufficiency of the evidence, appellate courts are bound by a jury's findings and can only disturb a jury verdict if it is clearly erroneous. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994).

It is the jury's province alone to determine the weight of the evidence and the credibility of witnesses, and to draw all reasonable inferences of fact. A jury's verdict will not be disturbed if there is any support for it in the record. *Murphy v. Glenn*, 964 P.2d 581 (Colo.App.1998).

As previously noted, under Delaware law, directors of a corporation are liable to creditors of the corporation for an illegal distribution when the directors authorize such distribution while the corporation is dissolved or insolvent. Del.Code Ann. tit. 8, § 174(a) (1998); *Geyer v. Ingersoll Publications Co.*, *supra*. An insolvent corporation is one whose asset value has decreased to less than the amount of its debts. *Geyer v. Ingersoll Publications Co.*, *supra*.

At trial, ASI's expert testified that PMI was insolvent when the distribution occurred. The expert based this opinion on PMI's financial statements for the two years preceding the year in which the distribution occurred, and on notes in ASI's consolidated financial statement. The financial statements were admitted, and although defendant presented conflicting evidence on the issue of insolvency, the jury was free to determine the weight of the evidence and the credibility of witnesses in the manner it deemed appropriate.

Because there is support for the jury's determination in the record, we may not disturb the verdict on appeal. *See Murphy v. Glenn*, supra.

### IV.

In a related argument, defendant also contends the trial court erred in allowing ASI's expert to testify on the issue of insolvency because there was inadequate pretrial disclosure of the nature of the expert's testimony. We conclude that any error in this regard was harmless.

C.R.C.P. 26(a)(2)(B)(II) governs pretrial disclosure of the opinions of experts who are not "retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve giving expert testimony." C.R.C.P. 26(a)(2)(B)(I). Opinions of such experts must be disclosed by the party presenting the expert in a report which contains "the qualifications of the witness and a complete statement describing the substance of all opinions to be expressed and the basis and reasons therefor." C.R.C.P. 26(a)(2)(B)(II).

C.R.C.P. 37(c)(1) states:

A party that without substantial justification fails to disclose information required by C.R.C.P .... 26(a) ... shall not, unless such failure is harmless, be permitted to present any evidence not so disclosed at trial....

ASI's expert was listed as an expert in a timely C.R.C.P. 26(a)(2)(B)(II) disclosure, but the disclosure stated only that the expert would testify regarding amounts owed to ASI as a creditor of PMI. Later, in the trial management order, ASI added that the expert would also testify "with regard to the financial records of [PMI] contained in [ASI's] records as it relates to the insolvency of [PMI]." ASI had not disclosed this testimony pursuant to C.R.C.P. 26(a)(2)(B)(II).

At trial, when ASI called the expert to testify to PMI's insolvency, defendant objected on the grounds that the Rule 26 expert designation had not disclosed testimony on that subject. The trial court overruled the objection, concluding that the definition of insolvency had previously been agreed upon by counsel, and that the definition was fairly simple and non-technical. The court ruled that the witness could testify to insolvency if a proper foundation were laid.

We perceive no prejudice to defendant resulting from the court's ruling. Although ASI's C.R.C.P. 26(a)(2)(B)(II) disclosure did not indicate that the expert would testify to PMI's insolvency, other plaintiffs, who ultimately did not participate in the suit, had properly disclosed the testimony of several experts regarding PMI's insolvency.

Further, defendant was aware that insolvency would be a contested issue at trial, had listed his own expert on insolvency in his C.R.C.P. 26 disclosures, and the trial management order signed by defendant's counsel stated that the expert would be called for the purpose of testifying to insolvency.

In addition, defendant had called his own expert to testify at trial regarding insolvency, as did Casement, and the discussion of counsel at trial following defendant's objection indicates that defense counsel also knew ASI's expert would be called for this purpose. As to defendant's assertion that his surprise at the expert testimony prevented an adequate cross-examination, he does not specify what additional information he could have elicited on cross-examination or how the absence of such information caused him prejudice. Nor did he ask for a continuance.

Thus, while we do not condone the actions of ASI in failing properly to disclose the testimony of this expert under C.R.C.P. 26, we conclude that any error the trial court may have made in failing to exclude the testimony of this witness was harmless.

## V.

For several reasons, defendant contends the trial court also erred in submitting certain instructions to the jury. We reject each argument in turn.

### A.

Defendant asserts that the trial court should not have given the jury an instruction allowing ASI a right of recovery in its capacity as a shareholder of PMI. But, even if we were to assume, without deciding, that this instruction was erroneously submitted to the jury, the jury ultimately found in favor of defendant with regard to this claim.

Thus, we conclude any error was harmless. *See Shutt v. Kaufman's, Inc.,* 165 Colo. 175, 438 P.2d 501 (1968); *Zertuche v. Montgomery Ward & Co., Inc.,* 706 P.2d 424 (Colo. App.1985).

### B.

Defendant next contends the trial court erred by giving the jury an instruction which inadequately described defendant's business judgment rule defense. We disagree.

Under Delaware law, the business judgment rule is the offspring of the fundamental principle that the business and affairs of a corporation are managed by or under its board of directors. In carrying out their managerial roles, directors are charged with a fiduciary duty to the corporation and its shareholders. *Smith v. Van Gorkom,* 488 A.2d 858 (Del.1985).

The business judgment rule exists to protect and promote the full and free exercise of the managerial power granted to directors. The rule establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. *Smith v. Van Gorkom, supra* ; *Aronson v. Lewis,* 473 A.2d 805 (Del.1984).

However, the protections of the business judgment rule can only be claimed by disinterested directors whose conduct otherwise meets the tests of business judgment. As the Delaware Supreme Court explained in *Aronson v. Lewis, supra,* 473 A.2d at 812:

> [D]irectors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.

To invoke the protection of the business judgment rule, directors have a duty to inform themselves, before making a business decision, of all material information reasonably available to them. They must then act with requisite care in the discharge of their duties. *Aronson v. Lewis, supra,* 473 A.2d at 812 ("While the Delaware cases use a variety of terms to describe the applicable standard of care, ... under the business judgment rule director liability is predicated upon concepts of gross negligence.").

A party is entitled to an instruction embodying a theory of the case if it is supported by competent evidence. *Hansen v. State Farm Mutual Automobile Insurance Co.*, 957 P.2d 1380 (Colo.1998). Nevertheless, where the instructions as a whole correctly state the law of the case and treat the parties fairly, there is no error in a court's failure to give additional instructions. *Aspen Plaza Co. v. Garcia*, 691 P.2d 763 (Colo.App. 1984).

Here, defendant tendered the following instruction regarding Delaware's business judgment rule to the trial court:

There is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.

In order to prevail on its unlawful dividend and breach of fiduciary duty claims, the plaintiff must rebut the presumption by a preponderance of the evidence that in authorizing the distribution by [PMI] of the [MacGregor] shares at issue, the defendants acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of [PMI].

The trial court refused to give the tendered instruction to the jury, but it sent another instruction to the jury stating that:

It is presumed that directors act reasonably, but this presumption can be overcome by a showing of gross negligence.... Gross negligence means reckless indifference to or a deliberate disregard of a corporation's stockholders or actions which are without the bounds of reason; it is a higher level of negligence representing an extreme departure from the ordinary standard of care.

If you find that the defendants derived any personal financial benefit or were on both sides of the transaction, then the business judgment rule has no application as a defense.

Although the court's instruction may not have given as much detail on the business judgment rule as defendant's tendered instruction, nevertheless, all applicable elements of the defense were embodied in the instruction given. Further, in reaching its verdict, the jury necessarily determined that the business judgment defense was unavailable to defendant. We thus perceive no error.

### C.

Defendant next contends the trial court erred in not including, in the jury instruction on ASI's creditor claim, the requirement that defendant's conduct as a director had to rise to the level of gross negligence. However, defendant did not object to this instruction at trial, and we thus conclude that any such objection was waived. *See Life Care Centers of America, Inc. v. East Hampden Associates Ltd. Partnership*, 903 P.2d 1180 (Colo.App.1995).

### D.

Defendant next maintains that the trial court erred in refusing to give a portion of his tendered instruction which discussed the doctrine of unclean hands. We disagree.

Under the doctrine of unclean hands, one who comes into equity must do so with clean hands. The court will not consider a request for equitable relief under circumstances where the litigant's own acts offend the sense of equity to which he or she appeals. *Nakahara v. NS 1991 American Trust*, 718 A.2d 518, 522 (Del.Ch.1998).

In order for the doctrine to apply, the improper conduct must relate directly to the underlying litigation. In other words, the inequitable conduct must have an immediate and necessary relation to the claims under which relief is sought. *Nakahara v. NS 1991 American Trust*, supra.

Here, defendant tendered an instruction on unclean hands that applied only to ASI's creditor claim. This instruction stated that ASI was precluded from pursuing the creditor claim if ASI:

[A]cted unfairly or reprehensibly by improperly creating and accounting for the debt upon which Ajay Sports, Inc. seeks recovery from defendants while controlling

the operations of Pro–Mark, Inc. seeking to charge defendants with expenses that are unreasonable, or wrongfully agreeing to sell the Double Eagle trademark rights to [PMI] when Ajay Sports, Inc. knew, [or] should have known, that it did not own such rights and that its subsidiary, Ajay Leisure Products, Inc., was incapable of transferring or licensing such rights to [PMI] . . . .

The trial court eliminated the portion of the instruction concerning ASI's alleged wrongful agreement to sell trademark rights it did not own, and the portion stating that Ajay Leisure could not transfer such rights. The remainder of the instruction was sent to the jury. The court explained that it viewed the eliminated portion of the instruction as an attempt by the defendant to interject a defense into the proceedings that the court had earlier refused to allow defendant to present.

■ Without determining whether ASI's conduct was inequitable, as defendant contends, we conclude for a different reason that the trial court did not err in eliminating these portions of the instruction.

The submitted and tendered instruction related only to ASI's creditor claim. Whether ASI had acted inequitably in transferring rights that allowed it to become a shareholder of PMI was relevant only to ASI's claim as a shareholder. In contrast, ASI's creditor claim was based on allegations that defendant owed money for marketing, manufacturing, and administrative expenses.

Because ASI's status as a shareholder of PMI had no immediate and necessary relation to ASI's claim for relief as a creditor, *see Nakahara v. NS 1991 American Trust, supra,* we conclude the trial court did not err in giving the modified instruction.

### E.

■ Defendant next asserts that the trial court erred in refusing to tender a jury instruction defining the word, "creditor." We disagree.

■ Absent a showing of substantial, prejudicial error, a trial court's refusal to give a requested jury instruction does not warrant a reversal of a judgment. *See Armentrout v. FMC Corp.,* 842 P.2d 175 (Colo. 1992). Further, it is not reversible error for a trial court to refuse an instruction if the instructions ultimately given encompass the contents of the rejected instruction. *See Community Hospital v. Fail,* 969 P.2d 667 (Colo.1998).

Here, the jury was instructed that it had to find ASI was a creditor of PMI before finding PMI liable as a debtor. While a definition of creditor was not contained in the jury instructions, we cannot say that this term, used in the context presented here, is of such a technical nature or so misled the jury that the failure to define it led to substantial, prejudicial error. *Cf. Armentrout v. FMC Corp.,* supra.

### F.

Defendant next contends the trial court erred in failing to submit a jury instruction he proposed on ASI's status as a shareholder of PMI. The instruction challenged ASI's shareholder status based on an asserted lack of consideration for the PMI stock. However, ASI's status as a shareholder of PMI was relevant only with regard to ASI's shareholder claim, and defendant was successful in his defense of this claim. Hence, any error in this regard was harmless. *See Armentrout v. FMC Corp.,* supra.

### VI.

■ Defendant next contends the trial court erred in entering judgment on the jury verdict because the jury awarded a different amount of compensatory damages against defendant and against Casement. The jury returned a verdict finding defendant liable for two thirds of the compensatory damages, but found Casement liable for only one third of such damages.

Defendant maintains that defendant and Casement were both directors of the corporation, that they were jointly and severally liable for compensatory damages, and therefore, that the compensatory damages could not be apportioned among the defendants.

We conclude this issue was not adequately preserved for appeal.

At trial, defendant submitted a proposed jury verdict which required the jury to find liability as to both defendants or not at all. The trial court expressed concern because Casement had testified he was not a director of PMI, and the jury's reliance on this testimony could have led to conflicting determinations of liability with regard to defendant and Casement. To avoid this problem, the trial court determined that it would submit two separate verdict forms to the jury.

According to defendant, the submission of separate verdict forms prejudiced him because it allowed the jury to apportion damages against him and Casement based on findings of relative fault. Defendant further argues that the separate forms prejudiced him by calling undue attention to allegations that Casement was not a director of PMI when both he and Casement were acting as directors at the time of the distribution.

At the time the trial court ruled that it would send two separate verdict forms to the jury, defendant lodged only a general objection to the verdict forms, stating that the forms were prejudicial and tended "to drive a wedge" between defendant and Casement. He made no objection of any kind regarding the issue he now asserts on appeal.

■ Such general objections to jury instructions do not sufficiently preserve issues for appellate review. *See Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984); C.R.C.P. 51. And, because defendant raised this issue for the first time in post-verdict motions, we will not address the issue on appeal. *See Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315 (Colo.1996)(question of whether jury verdicts were inconsistent or duplicative was not preserved for review where defendants did not object to verdict forms prior to submission to jury on the basis that instructions allowed jury to assess inconsistent or duplicative damages, but instead where defendants raised the issue for the first time in post-verdict motions).

## VII.

■ However, because issues regarding the exemplary damages arose in a different procedural posture and are properly before us, we do address the propriety of those damages. Damage questions under the facts of this case are to be decided under Colorado law because all the significant relationships with the occurrence and the parties took place here. *Ranger v. Fortune Insurance Co.,* 881 P.2d 394 (Colo.App.1994).

### A.

Defendant contends the jury's award of exemplary damages was unwarranted as a matter of law. We are not persuaded.

Exemplary damages are controlled by statute. Section 13–21–102, C.R.S.1999. A jury awarding damages in civil actions may also award exemplary damages if the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct. Section 13–21–102(1)(b), C.R.S.1999. Willful and wanton conduct is defined as:

[C]onduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff.

Section 13–21–102(1)(b), C.R.S.1999.

■ The question of the sufficiency of evidence to justify an award of exemplary damages is a question of law. *Mince v. Butters,* 200 Colo. 501, 616 P.2d 127 (1980). In reviewing a challenge to the sufficiency of the evidence to support an award of exemplary damages, we view the evidence in its totality and in the light most supportive of the verdict. *See Bodah v. Montgomery Ward & Co.,* 724 P.2d 102 (Colo.App.1986).

■ Here, evidence in the record exists to support a finding that defendant negotiated liability releases for himself to PMI's detriment and disregarded the solvency of PMI on the date of the distribution. We conclude that these actions meet the definition of willful and wanton conduct. Therefore, viewing the evidence in its totality and in the light most supportive of the verdict, we cannot say

the evidence was insufficient to support an award of exemplary damages.

Given this conclusion, we necessarily reject defendant's related contention that the trial court erred in submitting an instruction on exemplary damages because no evidence existed to support such an instruction. We conclude an evidentiary foundation existed to support the jury's determination that defendant had engaged in willful and wanton conduct. Therefore, the same evidentiary foundation provided a basis for the instruction on exemplary damages. *See Miller v. Byrne*, 916 P.2d 566 (Colo.App.1995).

### B.

We also reject defendant's assertion that the jury's award of exemplary damages was excessive.

The size of an exemplary damages award is committed to the discretion of the fact finder, and a reviewing court will not disturb the award absent an abuse of that discretion. An award will be set aside only if it appears the jurors were impermissibly motivated by passion or prejudice.

In considering this question, the court reviews the nature of defendant's acts, the economic status of defendant, and the deterrent effect of the award on others. *Ortivez v. Davis*, 902 P.2d 905 (Colo.App.1995).

Here, defendant makes no argument with regard to the relevant factors in his briefs on appeal and does not assert that the jury was influenced by passion or prejudice. Because we cannot say, as a matter of law, that the jury was improperly motivated or that its award was excessive, we reject defendant's argument.

### C.

Finally, defendant contends that the award of exemplary damages must be set aside because the jury found defendant liable to ASI for $70,140 in exemplary damages, but found Casement liable for $35,070 in exemplary damages, a different amount. We conclude that it is proper to permit a jury to apportion exemplary damages among multiple defendants.

Although exemplary damages are governed by statute, *see* § 13–21–102, there is no Colorado statutory or case law to guide us on the apportionment issue. Nevertheless, the majority of jurisdictions that have addressed the issue have upheld the apportionment of exemplary damages among multiple defendants under many differing factual situations.

The basic rationale is set forth as follows:

> Many states ... have adopted the rule that punitive damages may be apportioned between wrongdoers either by providing varying amounts of such award or by levying exemplary damages against some of the defendants but not others. In our view, this is the most sensible approach to the subject, for punitive damages, in order to be fair and effective, must relate to the degree of culpability exhibited by a particular defendant.... Punitive damages, in essence, represent a civil fine, and as such, should be imposed on an individual basis.

in *Embrey v. Holly*, 293 Md. 128, 141–42, 442 A.2d 966, 973 (1982). *See also Davidson v. Dixon*, 386 F.Supp. 482, 489 (D.Del.1974)(recognizing that defendants' liability for compensatory damages was joint and several, but holding that "separate awards for [exemplary] damages may be made against different defendants."); *Fredeen v. Stride*, 269 Or. 369, 525 P.2d 166 (1974)(reversing award of exemplary damages against one defendant but upholding award of exemplary damages against other defendant); Annot., 20 A.L.R. 666 (1968).

We adopt this reasoning and similarly conclude that in an action involving multiple defendants, as here, "[e]xemplary damages may be awarded against one or more of the defendants and not others, depending ... upon the differing degree of culpability or the existence or nonexistence of malice on the part of the defendants." *Exxon Corp. v. Yarema*, 69 Md.App. 124, 137, 516 A.2d 990, 997 (1986)(further concluding that the Uniform Contribution Among Tortfeasors Act does not apply to punitive damages, only to compensatory damages). *Cf.* § 13–50.5–102, C.R.S.1999 (stating that there is "no right of

contribution in favor of any tortfeasor who has intentionally, willfully, or wantonly caused or contributed to [an] injury or wrongful death").

We observe that this result, while not urged by the defendant, inures to his benefit. This is because the adoption of his position would have resulted in a judgment against him for $105,210, the total amount of the exemplary damages assessed, subject to any appropriate offsets resulting from Casement's satisfaction of the judgment.

Accordingly, we conclude the trial court did not err in permitting the jury to apportion the exemplary damages.

Judgment affirmed.

JUDGE JONES and JUDGE ROTHENBERG concur.