Colorado Court of Appeals Opinions || April 21, 2016

Colorado Court of Appeals -- April 21, 2016
2016 COA 60. No. 14CA1559. Calvert v. Mayberry.

  

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 60

 
 

 Court of Appeals No. 14CA1559
 City and County of Denver District Court No. 13CV390
 Honorable John W. Madden, IV, Judge

 David Ross Calvert,

 Plaintiff-Appellant,

 v.

 Diane L. Mayberry, a/k/a Diane Marie Laba-Mayberry; and Desiree L. Mayberry,

 Defendants-Appellees. 

 JUDGMENT AFFIRMED AND CASE
 REMANDED WITH DIRECTIONS

 Division V
 Opinion by JUDGE BERNARD
 Furman and Lichtenstein, JJ., concur

 Announced April 21, 2016

 Cox Baker & Page, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Plaintiff-Appellant

 James Law Firm, P.C., Eric M. James, Fort Collins, Colorado, for Defendant-Appellee Diane L. Mayberry

 Miller & Steiert, P.C., Gary M. Clexton, Christopher J. Forrest, Littleton, Colorado, for Defendant-Appellee Desiree L. Mayberry

 ¶1       If a lawyer enters into a contract with a client that violates Colo. RPC 1.8(a), one of the Colorado Rules of Professional Conduct, can the attorney later enforce the contract against the client? Appellate courts in Colorado have not previously addressed this question. We conclude that the answer to this question is "no."

 ¶2       The attorney, plaintiff, David Ross Calvert, asks us to reverse the summary judgment that the trial court entered in favor of his former client, defendant Diane L. Mayberry, also known as Diane Marie Laba-Mayberry, and her daughter, defendant Desiree L. Mayberry. We disagree with the attorney’s contentions, so we affirm the judgment. We also remand the case to the trial court to (1) determine whether the attorney prosecuted this appeal for the sole purpose of harassing the former client and her daughter or of delaying the resolution of these proceedings; and (2) if so, award the former client her daughter reasonable attorney fees related to this appeal.

 I. Background

 ¶3       In a 2009 disciplinary proceeding, the Colorado Supreme Court disbarred the attorney after a hearing board determined he had committed ethical violations that involved several people whom he had previously represented. People v. Calvert, 280 P.3d 1269 (Colo. O.P.D.J. 2011). As is relevant to this case, the hearing board found that the attorney had "plied a vulnerable client" — the former client in this case — "with loans in excess of one hundred thousand dollars." Id. at 1272.

 To secure his interest in those loan funds, he recorded a false deed of trust on the [former] client’s home in a second client’s name without the clients’ knowledge or consent. [The attorney] then attempted to persuade the second client to assign the deed of trust to [the attorney’s] real estate company which, when taken together with his earlier acts, signal[ed] a calculated scheme to deprive [the former] client of her home.

 Id.

 ¶4       One finding that supported the hearing board’s decision to disbar the attorney — the ultimate sanction in the hearing board’s quiver — was that the former client was "the epitome of a vulnerable victim: she suffer[ed] from mental illness and a severe chemical dependency, both of which significantly impair[ed] her judgment." Id. at 1287. The board also ordered the attorney to pay any attorney fees that the former client incurred to remove the false deed of trust from the chain of title on her house. 

 ¶5       The hearing board also found that the attorney had not complied with any of the requirements of Colo. RPC 1.8(a) when he made the loans to the former client. Those requirements are:

 A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

 (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

 (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

 (1) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer’s role in the transaction, including whether the lawyer is representing the client in the transaction.

 Colo. RPC 1.8(a).

 ¶6       The attorney then filed this case to recoup the money that he had loaned the former client. He claimed that she had entered into an oral contract with him to repay the money that he had loaned to her by giving him a security interest in her house.

 ¶7       The attorney alternatively asserted that the trial court should impose an equitable lien on the former client’s house. The attorney also filed claims against the former client’s daughter because the former client had quitclaimed her interest in the house to her daughter sometime after the attorney had loaned her the money. (The hearing board described the oral contract this way: the attorney had offered the former client a loan to remodel her house "on the understanding that the [former client] would repay [the attorney] out of the equity of her house." Id. at 1275.)

 ¶8       The former client and her daughter filed a motion for summary judgment. They asserted that the attorney could not enforce the oral contract because (1) the hearing board had disbarred him; and (2) the board had disbarred him because he had violated an ethical rule when he engaged in the same conduct — loaning money to the former client — that he asserted to be the substance of the oral contract.

 ¶9       The trial court granted the summary judgment motion in a thoughtful and detailed order. The court observed that, "[g]iven the importance of [Rule 1.8(a)] in protecting clients, permitting [the attorney] to reap the benefits of an agreement that he was ethically prohibited from entering [into] cannot be countenanced." So, "[a]s a general matter, and especially in light of the facts of this case," the oral contract between the attorney and the former client "violate[d] the letter and purposes of [Rule 1.8(a),] and [it is] therefore[] void as against public policy and unenforceable." (Emphasis added.)

 II. The Record Supports the Trial Court’s Decision to Grant the Summary Judgment Motion

 A. Summary Judgment Principles

 ¶10       We review a grant of summary judgment de novo. A.C. Excavating v. Yacht Club II Homeowners Ass’n, 114 P.3d 862, 865 (Colo. 2005). "Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law." Id.; see C.R.C.P. 56(c). We give the nonmoving party the benefit of all favorable inferences that may be drawn from the undisputed facts, and we resolve all doubts as to the existence of a triable issue of fact against the moving party. A.C. Excavating, 114 P.3d at 865. 

 ¶11       Our first step in resolving this appeal is to determine whether the doctrine of issue preclusion bars the attorney from relitigating factual issues that were litigated during the disciplinary proceeding.

 B. The Hearing Board’s Findings Bind the Attorney Under the Doctrine of Issue Preclusion

 ¶12       The doctrine of issue preclusion bars relitigation of an issue if:

 (1) the issue is identical to that actually and necessarily adjudicated in a prior proceeding;

 (2) the party against whom estoppel is asserted was a party or in privity with a party in the proceeding; $$(3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

 City of Thornton v. Bijou Irrigation Co., 926 P.2d 1, 82 (Colo. 1996).

 ¶13       The former client contends that, applying the doctrine of issue preclusion, she should not have to relitigate factual issues that the hearing board had previously resolved.

 ¶14       The attorney counters by asserting that the issues in this case are not identical to the issues resolved by the hearing board because the elements of his claims do not correspond to the requirements of Rule 1.8(a). He therefore urges us to apply a different issue preclusion test. He points to Bristol Bay Productions, LLC v. Lampack, 2013 CO 60, ¶19. In that case, our supreme court "examine[d] the elements of Bristol Bay’s fraud claims in both California and Colorado to determine whether the identity of the defendant [was] relevant to the causation element of the fraud and fraud-based claims in [the Colorado] case." Id.

 ¶15       But the attorney’s reliance on Bristol Bay Productions conflates issue preclusion with a different doctrine called claim preclusion. Claim preclusion bars subsequent claims by identical parties based on the same claim for relief after a final judgment on the merits. See Kuhn v. State, 897 P.2d 792, 795 (Colo. 1995). Even if the attorney’s reading of Bristol Bay Productions were correct, we would nonetheless conclude that this contention is something of a red herring. Our focus in this case is on the factual questions that were litigated before, and resolved by, the hearing board. The doctrine of issue preclusion applies to the relitigation of "factual . . . matter[s]" that a court previously litigated and decided. Carpenter v. Young, 773 P.2d 561, 565 n.5 (Colo. 1989). We therefore now apply the issue preclusion test found in Bijou Irrigation Co.

 ¶16       Issues actually and necessarily adjudicated. As is relevant here, the hearing board found the following facts in its opinion. And these factual findings were necessary to the board’s judgment because the board relied heavily on them when it decided to impose the ultimate sanction of disbarment.

 
 The attorney violated Rule 1.8(a) when he loaned money to the former client. Calvert, 280 P.3d at 1280.

 
 He loaned her approximately $150,000 over two years. Id. at 1276.

 
 The terms of the loans were not in writing. Id.

 
 He did not advise her to seek independent legal counsel before accepting the loans. Id.

 
 He obtained her signature on a deed of trust granting an interest in her home to a third party. Id. at 1275.

 
 She did not understand the content or significance of the deed of trust. Id. at 1276 n.15.

 
 He recorded the deed of trust against her house without her knowledge. Id. at 1276.

 
 He "recorded the deed in bad faith with the intention of profiting from his deceit." Id. at 1278.

 
 He then unsuccessfully tried to persuade or pressure another person to assign the deed of trust to the attorney’s real estate company. Id. at 1276-77.

 
 He engaged in a "calculated scheme to deprive [the former] client of her home." Id. at 1272.

 
 She was "the epitome of a vulnerable victim: she suffer[ed] from mental illness and a severe chemical dependency, both of which significantly impair[ed] her judgment." Id. at 1287.

 ¶17       Identity of parties. The attorney was obviously a party in the disciplinary proceeding.

 ¶18       Final judgment. The disciplinary opinion was a final judgment.

 ¶19       Full and fair opportunity to litigate. We conclude that the attorney had a full and fair opportunity before the hearing board to litigate the factual questions that are pertinent to this case.

 An inquiry into whether a party received a full and fair opportunity to litigate an issue must look to whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of [issue preclusion] be used to bar relitigation of that issue.

 Bebo Constr. Co. v. Mattox & O’Brien, P.C., 990 P.2d 78, 87 (Colo. 1999).

 ¶20       In deciding whether a party had a full and fair opportunity to litigate an issue, we consider such factors as whether the remedies and procedures in the disciplinary proceeding were substantially different from those in this case, whether the party against whom issue preclusion is sought had sufficient incentive to litigate vigorously, and the extent to which the issues are identical. A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy, 93 P.3d 598, 603 (Colo. App. 2004).

 ¶21       The hearing board applied procedures that were adequate to protect the attorney’s due process rights. See Bebo Constr. Co., 990 P.2d at 87. In particular, the hearing board received testimony from the attorney, the former client, the former client’s daughter, and other witnesses; the attorney was represented by a lawyer; the lawyer cross-examined witnesses during the hearing; and the supreme court upheld the board’s findings on review. See People v. Bennett, 810 P.2d 661, 665 (Colo. 1991)(hearing board’s factual findings are binding on review if supported by substantial evidence). The burden of proof in a disciplinary action — clear and convincing evidence — is more stringent than the burden of proof that applies in this case — a preponderance of the evidence. See In re Egbune, 971 P.2d 1065, 1067 (Colo. 1999)(district court’s ruling not binding on disciplinary hearing board because burden of proof in a civil action is generally a preponderance of the evidence).

 ¶22       The attorney’s incentive to defend his law license in the disciplinary proceeding, which permanently affected his livelihood and reputation, was at least as strong as his present incentive to recover the money that he loaned to the former client. And, as we noted above, the factual issues that the former client and her daughter seek to preclude the attorney from relitigating are identical to the ones that the board resolved.

 ¶23       Because we conclude that the former client met the four factors of the Bijou Irrigation Co. issue preclusion test, we further conclude that the hearing board’s factual findings bind the attorney in this case, including its finding that the attorney violated Rule 1.8(a) when he entered into the oral contract with the former client.

 ¶24       We now must decide what effect these facts have on the question of whether the oral contract between the attorney and his former client is enforceable. 

 C. The Oral Contract is Void and Unenforceable Because It Violates Rule 1.8(a) and Because It Transgresses the Public Policy That Supports the Ethical Rule

 ¶25       A contract is void "if the interest in enforcing [it] is clearly outweighed by a contrary public policy." Norton Frickey, P.C. v. James B. Turner, P.C., 94 P.3d 1266, 1267 (Colo. App. 2004). A court will not enforce such a void contract. Id.

 1. Rule 1.8(a) Is a Source of Public Policy

 ¶26       The ethical rules that govern the conduct of attorneys — the Colorado Rules of Professional Conduct — can be sources of public policy. See id.; see also Rocky Mountain Hosp. & Med. Serv. v. Mariani, 916 P.2d 519, 525 (Colo. 1996); S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein, 2014 COA 171, ¶24 (Colo. RPC 1.5(a) codifies public policy imposing a reasonableness requirement on fee-shifting agreements; a trial court has discretion to adjust fee award based on factors set forth in the rule); Roberts v. Holland & Hart, 857 P.2d 492, 496 (Colo. App. 1993)(assigning legal malpractice claims is against public policy reflected in professional rules prescribing attorney’s duties of confidentiality and loyalty). But, to qualify as a source of public policy, 

 the ethical provision must be designed to serve the interests of the public rather than the interests of the profession. The provision may not concern merely technical matters or administrative regulations. In addition, the provision must provide a clear mandate to act or not to act in a particular way.

 Rocky Mountain Hosp. & Med. Serv., 916 P.2d at 525; accord LK Operating, LLC v. Collection Grp., LLC, 331 P.3d 1147, 1164 (Wash. 2014)("[W]hether something can be a source of public policy in the context of contract enforceability should depend on whether it is primarily intended to promote the public good or protect the public from injury, and whether it was issued by an entity with the legal power and authority to set public policy in the relevant context.").

 ¶27       We next apply the test in Rocky Mountain Hospital & Medical Service to answer this question: Is Rule 1.8(a) a source of public policy? We conclude that it is.

 ¶28       The obvious purpose of Rule 1.8(a) is to protect the interests of clients, who are clearly part of the public, and not the interests of lawyers. Comment 1 to this rule states that a "lawyer’s legal skill and training, together with the relationship of trust and confidence between lawyer and client" can work together to "create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client[.]" Colo. RPC 1.8 cmt. 1. The ethical rule "is therefore designed to prevent an attorney, who likely benefits from a considerable advantage when dealing with a client, from exploiting the attorney-client relationship, given that the client should be free to repose a great deal of trust and confidence in the attorney." Rafel Law Grp. PLLC v. Defoor, 308 P.3d 767, 774 (Wash. Ct. App. 2013)(interpreting a substantively identical rule).

 ¶29       Rule 1.8(a) does not concern itself with merely technical matters. Rather, it aims to avoid the sorts of fundamental conflicts of interest that can grievously harm clients.

 ¶30       And Rule 1.8(a)’s requirements are mandatory and clear. The rule lays out easily understood and specific steps that lawyers must follow if they are to enter into business or financial arrangements with their clients. See Rocky Mountain Hosp. & Med. Serv., 916 P.2d at 525.

 ¶31       So what does this public policy mean?

 2. Analysis

 ¶32       Courts in other states have held that the violation of an ethical rule that is based on public policy renders contracts that were formed in violation of the ethical rule void. See Santiago v. Evans, 547 F. App’x 923, 926-27 (11th Cir. 2013)(a lawyer’s violation of Florida’s version of Rule 1.8(a) rendered a contract void as against public policy); Law Offices of Peter H. Priest, PLLC v. Coch, 780 S.E.2d 163, 174 (N.C. Ct. App. 2015)(lawyer who violated rule substantially similar to Rule 1.8(a) could not enforce resulting contract "in light of the strong public policy considerations that [the ethical rule] embodies"); see also Scolinos v. Kolts, 44 Cal. Rptr. 2d 31, 34 (Cal. Ct. App. 1995)("It would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement."); Succession of Cloud, 530 So. 2d 1146, 1150 (La. 1988)("When an attorney enters into a contract with his client in direct and flagrant violation of a disciplinary rule . . . [the court] should prohibit the enforcement of the contract . . . ."); Evans & Luptak, PLC v. Lizza, 650 N.W.2d 364, 370 (Mich. Ct. App. 2002)("[C]ontracts that violate our ethical rules violate our public policy and therefore are unenforceable."); cf. LK Operating, LLC, 331 P.3d at 1164-65 (Washington applies a presumptively void contract test). 

 ¶33       We are persuaded by the reasoning in those opinions, so we will apply it to this case. And, by doing so, we conclude that the oral contract between the attorney and the former client is void and unenforceable. The attorney violated an ethical rule — Rule 1.8(a) — and that ethical rule is based on public policy. See Rocky Mountain Hosp. & Med. Serv., 916 P.2d at 525; Rafel Law Grp. PLLC, 308 P.3d at 774.

 D. Conclusion

 ¶34       Based on the preceding analysis, we conclude that the trial court properly granted summary judgment in favor of the former client and her daughter. We reach this conclusion because there are no issues of material fact concerning any of the attorney’s six claims, and the former client and her daughter are entitled to judgment as a matter of law. See A.C. Excavating, 114 P.3d at 865.

 1. The Claims That Were Based on the Oral Contract

 ¶35       Four of the claims against the former client depended on the oral contract. These claims fail as a matter of law because we have concluded that the oral contract is void and unenforceable. We list each of these claims, and we explain how they incorporated the oral contract.

 
 Claim 1: Agreement for debt.
 The attorney asserted that he made loans to the former client "in contemplation of the equity of the [former client’s] house and an agreement between [the attorney and the former client] that eventually [the former client] would grant the [attorney] a lien interest in the property."

 
 Claim 2: Breach of contract.
 The contract in this claim was the oral contract.

 
 Claim 4: Fraudulent transfer.
 The attorney asserted that the former client’s decision to execute a quitclaim deed to her daughter impaired the interest in her house that the oral contract gave him.

 
 Claim 6: Intentional interference with a contract.
 This claim, which named the former client’s daughter, asserted that the daughter had convinced the former client to breach her oral contract with the attorney by executing the quitclaim deed. 

 2. The Equitable Lien Claim

 ¶36       The attorney contends that the trial court erred when it applied the doctrine of unclean hands to bar Claim 3, his request to place an equitable lien on the former client’s home. We disagree.

 ¶37       Under the doctrine of unclean hands, a "court will not consider a request for equitable relief under circumstances where the litigant’s own acts offend the sense of equity to which he or she appeals." Ajay Sports, Inc. v. Casazza, 1 P.3d 267, 276 (Colo. App. 2000). The doctrine applies when the improper conduct relates directly to the underlying litigation. Id.

 ¶38       The attorney’s ethical misconduct, as described by the hearing board, relates directly to his attempt to take the former client’s house from her. We therefore conclude that the trial court properly, as a matter of law, applied the doctrine of unclean hands to bar his claim for an equitable lien on the house.

 3. The Fraud Claim against the Former Client’s Daughter

 ¶39       The attorney also asserted a claim for deceit, Claim 5, which was based on an allegation that the former client’s daughter had engaged in fraud. He asserted that the former client’s reliance on her daughter’s allegedly false representation damaged his interests. But an essential element of deceit by fraud is that the plaintiff — the attorney in this case — acted in reliance on the alleged misrepresentation. See Knight v. Cantrell, 154 Colo. 396, 402, 390 P.2d 948, 951 (1964); Kilpatrick v. Miller, 55 Colo. 419, 423, 135 P. 780, 782 (1913). And the attorney does not allege that the former client was acting as his agent. So this claim cannot stand as a matter of law.

 III. The Record Supports the Trial Court’s Decision to Award Attorney Fees to the Former Client and Her Daughter

 ¶40       We review a trial court’s decision to award attorney fees under section 13-17-102, C.R.S. 2015, for abuse of discretion. We will affirm such a decision if the evidence supports it. Haney v. City Court, 779 P.2d 1312, 1316 (Colo. 1989); Webster v. Boone, 992 P.2d 1183, 1188 (Colo. App. 1999); see also Front Range Home Enhancements, Inc. v. Stowell, 172 P.3d 973, 976 (Colo. App. 2007); Mitchell v. Ryder, 104 P.3d 316, 320 (Colo. App. 2004). We must accept the factual findings underlying the decision to award attorney fees unless they are "so clearly erroneous as not to find support in the record." Page v. Clark, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979).

 ¶41       A court may award attorney fees if it finds that a party brought an action that lacked substantial justification. § 13-17-102(4). "‘[L]acked substantial justification’ means substantially frivolous, substantially groundless, or substantially vexatious." Id. "A vexatious claim is one brought or maintained in bad faith to annoy or harass. It may include conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of truth." Engel v. Engel, 902 P.2d 442, 446 (Colo. App. 1995). "[T]he rationale for awarding attorney fees is even stronger" when the record shows that a party brought an action in bad faith. W. United Realty v. Isaacs, 679 P.2d 1063, 1069 (Colo. 1984).

 ¶42       In this case, the trial court found it

 disturbing that the [attorney], after being disbarred in connection with a scheme to deprive a vulnerable client of her home — a scheme involving the recording of a false deed of trust on the property — would then try to use the court system to obtain a lien on that same property.

 ¶43       The trial court also noted that the attorney’s testimony in the disciplinary proceeding flatly contradicted some of the claims that he brought in this case. (For example, the attorney testified before the hearing board that he did not have an oral contract with the former client and, although he had given her money, he did not "loan" it to her. The hearing board rejected this testimony.) The court found that this case appeared to be "a continued effort to achieve an improper objective after that effort was thwarted by [the attorney’s] disbarment."

 ¶44       These findings are supported by ample evidence in the record. We conclude that they, in turn, support the trial court’s determination that this case lacked substantial justification and that the attorney brought it in bad faith. So we further conclude that the trial court did not abuse its discretion when it awarded attorney fees to the former client and to her daughter.

 IV. We Remand This Case to the Trial Court to Determine Whether to Award Appellate Attorney Fees to the Former Client and Her Daughter

 ¶45       The former client and her daughter request an award of attorney fees related to this appeal under C.A.R. 39.5. They contend that the appeal is frivolous.

 ¶46       An appeal may be frivolous as filed, frivolous as argued, or both. Castillo v. Koppes-Conway, 148 P.3d 289, 292 (Colo. App. 2006). 

 ¶47       An appeal is frivolous as argued if the appellant commits misconduct in arguing the appeal. Id. This appeal is not frivolous as argued because the improprieties in the attorney’s amended opening brief discussed by the former client and her daughter do not rise to the level of misconduct. And, although we agree that the attorney’s original opening brief in this appeal was stricken, it was stricken because parts of it violated C.A.R. 28. We conclude that these violations did not render the attorney’s appeal frivolous as argued. And the amended opening brief omits much of the objectionable content that appeared in the original opening brief.

 ¶48       The test for whether an appeal is frivolous as filed has two separate prongs. The first prong asks whether the judgment below was so plainly correct and the legal authority contrary to the appellant’s position is so clear that there was really no appealable issue. Castillo, 148 P.3d at 292. We conclude that this appeal was not frivolous as filed under the first prong because it presented a novel legal issue that had not previously been addressed in Colorado.

 ¶49       The second prong of the frivolous-as-filed test asks the question whether the appeal was "prosecuted for the sole purpose of harassment or delay." Mission Denver Co. v. Pierson, 674 P.2d 363, 366 (Colo. 1984); Castillo, 148 P.3d at 292. The former client asserts in her answer brief that the attorney "ignored" an order from the trial court to remove a lien that he had filed on the former client’s house and "proceeded with this appeal." By doing so, the answer brief alleges that he "needlessly cloud[ed] title" to the house, and he "caused suffering and financial hardship" to the former client and her daughter.

 ¶50       If true, these alleged facts could show that the attorney filed this appeal to harass the former client and her daughter and to delay the resolution of these proceedings. But we cannot find facts; we are an appellate court. See People v. A.W., 982 P.2d 842, 852 (Colo. 1999)("Appellate courts are not empowered to make factual findings . . . .").

 ¶51       We conclude that we must therefore remand this case to the trial court to determine whether this appeal is frivolous as filed because the attorney "prosecuted [it] for the sole purpose of harassment or delay." Mission Denver Co., 674 P.2d at 366; Castillo, 148 P.3d at 292. If the trial court finds that the attorney did so, then the court shall determine and award reasonable attorney fees to the former client and her daughter. If the court finds that the attorney did not do so, then the court shall not award such fees.

 ¶52       The judgment is affirmed. The case is remanded to the trial court to determine whether the attorney prosecuted this appeal for the sole purpose of harassment or delay and, if so, to award reasonable attorney fees to the former client and her daughter.

 JUDGE FURMAN and JUDGE LICHTENSTEIN concur.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || April 21, 2016

Back