**In re Clarence THOMAS, Debtor.**

**Clarence Thomas, Appellant,**

v.

**Federal National Mortgage Association, Appellee.**

**BAP No. WO–11–037.**
**Bankruptcy No. 10–17039.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 7, 2012.

Submitted on the briefs: *

Roland V. Combs, III, of The Law Firm of Roland V. Combs, III & Associates, PLC, Oklahoma City, OK, for Appellant.

Brian J. Rayment and Bryan M. Harrington of Kivell, Rayment & Francis, P.C., Tulsa, OK, for Appellee.

Before THURMAN, Chief Judge, NUGENT, and ROMERO, Bankruptcy Judges.

## OPINION

THURMAN, Chief Judge.

Bankruptcy courts have been granted broad powers to administer debtors' estates. Such power requires careful attention to the statutes and rules that govern bankruptcy proceedings. In this case, the Bankruptcy Court may have correctly ruled on an issue of law. But in the process, one of a myriad of procedural requirements was overlooked. We therefore are compelled to reverse and remand for its consideration of the issue of the Appellee's standing to seek relief.

## I. BACKGROUND

On September 14, 2007, debtor Clarence Thomas ("Debtor"/"Appellant") executed a promissory note ("Note"), in the amount of $253,000, and a mortgage on his residence ("Property") that secured the Note. The lender and Note payee was Freedom Mortgage Corporation ("Freedom"). The mortgagee was MERS,[1] acting as Freedom's nominee. Debtor made 11 payments on the mortgage, then stopped paying in October 2008. Sometime prior to February 4, 2009, Freedom endorsed the Note in blank, making it a bearer instrument under Oklahoma law,[2] and trans-

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. MERS is an acronym for Mortgage Electronic Registration Systems, a private company that tracks ownership and servicing rights in mortgages.

2. *See* Okla. Stat. Ann. tit. 12A, § 1–201(5) (defining "bearer") and § 3–205(b) (effect of [e]ndorsement in blank).

ferred possession of it to Chase Home Finance, LLC ("Chase"). In February 2009, Chase filed a state court foreclosure action against Debtor that resulted in a judgment of foreclosure on June 25, 2009. Debtor did not appeal the foreclosure judgment.

On August 24, 2009, prior to a scheduled sheriff's sale of the Property, Debtor filed a previous Chapter 13 petition, thus staying the foreclosure. On June 22, 2010, Chase filed a proof of secured claim in that bankruptcy case. On August 11, 2010, the case was dismissed. Shortly after the dismissal, Chase apparently transferred the Debtor's original Note and mortgage to appellee, Federal National Mortgage Association ("Appellee").[3] An assignment of the Note and mortgage to Appellee, which indicates an effective date of August 21, 2010, was recorded on September 13, 2010. However, the recorded document stated that the assignment was made by MERS (which was incorrect) rather than by Chase.[4]

On November 22, 2010, Debtor filed the current Chapter 13 bankruptcy case. In his Schedule C, Debtor claimed the Property as exempt pursuant to Oklahoma's homestead exemption.[5] Appellee filed a proof of claim ("POC") based on the defaulted Note and mortgage on February 25, 2011. On May 17, 2011, Debtor objected to Appellee's POC, claiming Appellee had no standing to assert the claim. Attached to Appellee's POC were copies of: 1) the Note (without Freedom's endorsement), and 2) the recorded assignment of mortgage from MERS to Appellee. Also on May 17, 2011, Debtor filed an adversary proceeding against Freedom, Chase, MERS, and Appellee. In the Complaint, Debtor asserted both that the defendants had no enforceable secured interest in the Property, and that the POCs filed by Chase and Appellee were false and fraudulent. The Complaint also requested damages.

The following day, May 18, 2011, Appellee filed an "Application" seeking to confirm that the automatic stay had expired pursuant to § 362(c)(3)(A).[6] On the same day, the Bankruptcy Court entered an "Order Confirming Termination of Automatic Stay By Operation of Law" (the "May 18 Order"), finding that "[t]he stay imposed against [Appellee] with regard to its lien" on the Property "terminated by operation of law on December 22, 2010," as no motion to extend the stay had been filed.

Within ten days of the May 18 Order, Debtor filed both a motion seeking to declare that the stay remained in effect and an objection to Appellee's "motion" regarding the stay. The Bankruptcy Court conducted a hearing on the cross-pleadings regarding the stay on June 28, 2011, orally ruling in favor of Appellee. Debtor filed a notice of appeal from the May 18 Order on July 12, 2011, to which this Court issued an order to show cause on the apparently untimely notice of appeal. On August 10, 2011, this Court issued an order determining that the notice of appeal was timely, but premature, pursuant to Federal Rule

---

**3.** It is not clear exactly when, or if, an actual physical "transfer" took place, as counsel for Chase is also counsel for Appellee and he simply may have retained possession of the original documents.

**4.** Appellee indicates that this information was erroneous, and that the transfer actually was made by Chase.

**5.** Okla. Stat. Ann. tit. 31, § 1(A)(1) (West 2009).

**6.** Section 362(c)(3)(A), which is applicable only when a debtor's bankruptcy petition is filed within one year of the dismissal of the debtor's previously filed bankruptcy case, provides that the automatic stay terminates in such cases, "with respect to the debtor," 30 days after the second case is filed.

of Bankruptcy Procedure 8001. On October 6, 2011, the Bankruptcy Court entered its final order on Appellee's Application, thereby resolving the notice of appeal issue.

## II. JURISDICTION AND STANDARD OF REVIEW

■ This Court has already determined that this appeal is timely, and neither party elected district court consideration of it. Therefore, this Court has appellate jurisdiction.[7] The Bankruptcy Court's decision regarding the status of the automatic stay is essentially an interpretation of § 362(c)(3), which is reviewed by this Court *de novo*.[8]

## III. ISSUES

Debtor argues in this appeal that:

1. The Bankruptcy Court erroneously granted relief to Appellee without first establishing that Appellee had "standing";

2. Appellee did not have standing either to file a POC or to commence any action against the Debtor; and

3. Since the automatic stay does not terminate as to estate property, it is still in effect as to the Property.

## IV. DISCUSSION

The Debtor's first two issues involve standing and are addressed separately, although the conclusion in determining both is the same.

A. Issue 1: Whether the Bankruptcy Court failed to establish standing.

■ This contested matter began on May 17, 2011, when Debtor filed an objection to Appellee's POC in his main bankruptcy case, and also filed an adversary complaint against Appellee asserting that it held no valid interest in the Property. On the same day, Appellee filed a motion in Debtor's main case seeking confirmation from the Bankruptcy Court that the automatic stay had expired, pursuant to § 362(c)(3), with respect to the Property.[9] However, Appellee withdrew this "motion," re-filing it the following day as an "Application." The Application included the following representation:

The [Appellee] has a perfected interest in the above described property. [Appellee] is the holder of the original note, a copy of which is attached to this Application as Exhibit "A." Chapter 13 Trustee John Hardeman has personally viewed the original Note and original Mortgage. Under Oklahoma Statues [sic], the proper named [Appellee] is the holder of the note regardless of any following assignments.[10]

On the day the Application was filed, the Bankruptcy Court entered an order ["Order One"], including findings of fact and conclusions of law "based upon representation of [Appellee's] Counsel," that the automatic stay had "terminated by operation of law as to all creditors on December 22, 2010."[11] Order One's conclusion was based, in part, on its finding that "[Appellee] has a perfected interest in the [Prop-

---

**7.** It appears that all parties have assumed that the Bankruptcy Court's order on the status of the automatic stay is final, based on case law to the effect that orders granting or denying relief from stay are final for purposes of appeal. Though the Appealed Order in this case does not deal with relief from stay *per se*, it deals with a similar situation, which is whether a creditor may proceed, outside of the bankruptcy case, against property of the debtor. As such, the Appealed Order is "final" for the same reasons as is a stay relief order.

**8.** The standard of review for relief from stay orders, however, is abuse of discretion.

**9.** The Application indicated that it was served on Debtor's attorney through the court's electronic filing system on May 18, 2011, that same day it was filed.

**10.** Application for Entry of Order Confirming Termination of Automatic Stay by Operation of Law at 3, ¶ 8, *in* Appx. at 52.

**11.** Order Confirming Termination of Automatic Stay by Operation of Law ("Order

erty] as [Appellee] is the holder of the original Note." [12]

Nine days after the entry of Order One, Debtor filed: 1) a "Motion to Determine that the Automatic Stay Remains in Effect to Property of the Estate," and 2) an objection to Appellee's Application. Both of Debtor's post-judgment filings were based, in part, on Debtor's assertion that Appellee was without standing to bring an action against Debtor or to file a POC in his bankruptcy. Appellee responded to Debtor's motion and objection, and a hearing was scheduled for June 28, 2011.

Four matters were before the Bankruptcy Court at the June 28 hearing: 1) Debtor's objection to Appellee's POC; 2) Appellee's Application; 3) Debtor's motion for a determination that the stay remained in effect; and 4) confirmation of Debtor's proposed Chapter 13 plan, to which the trustee had objected. At the hearing, the Bankruptcy Court considered the Application first, noting that if it were to be granted, "that will moot the others." [13] Shortly thereafter, the Bankruptcy Court observed that the Debtor's motion regarding the stay and his opposition to the Application were based on lack of standing, stating that "[w]e're not going to hear that in this one here." [14] Shortly thereafter, the Bankruptcy Court ruled that the automatic stay had terminated as to the Debtor and his property and that, since the Property was claimed as exempt, it was not part of the Debtor's estate. [15] As the Bankruptcy Court prepared to adjourn the proceedings, stating "I think that takes care of all the others," Appellee's counsel stated that he had "the original note with regard to any standing issues, if you wanted me to enter it as evidence." [16] As Debtor points out on appeal, the Bankruptcy Court did not accept counsel's offer or otherwise inspect any documents he may have had, stating instead, "I don't think that's before the Court now. It may be if [Debtor's counsel] files again." [17]

■ Debtor contends on appeal that the Bankruptcy Court erred by proceeding without determining that Appellee had standing to seek relief. We agree. As noted by a number of other courts, foreclosure actions have recently been rife with issues of inadequate paperwork showing entitlement to assert a claim. [18] It is the bankruptcy courts' duty to ensure that debtors are not subjected to legal challenges by those without standing to do so. To that end, we consider the following statement by the District of Massachusetts Bankruptcy Court to be particularly relevant:

Today, more and more homeowners turn to the bankruptcy system for protection when facing financial hardship or impending foreclosure. It is this Court's responsibility to ensure that these debtors receive the full protection of the Bankruptcy Code, including the benefit of an automatic stay, for as long as they are entitled to it. Unfortunately, concomitant with the increase in foreclosures is an increase in lenders who, in their rush to foreclose, haphazardly fail

One") at 1 and 3, *in* Appx. at 76 and 78. Order One also provided that "[n]o action my be taken for 10 days from the date this order is entered." *Id.* at 3, *in* Appx. at 78.

12. *Id.*

13. Transcript of June 28, 2011, Proceedings at 3, *l.* 8, *in* Appx. at 104.

14. *Id.* at 4, *ll.* 5–6, *in* Appx. at 105.

15. *Id.* at 5, *ll.* 17–22, *in* Appx. at 106.

16. *Id.* at 6, *ll.* 6–8, *in* Appx. at 107.

17. *Id.* at *ll.* 9–10, *in* Appx. at 107.

18. *See, e.g., In re Lippold*, 457 B.R. 293, 294 (Bankr.S.D.N.Y.2011) (standing issues "highlight a well-publicized and persistent problem with inadequate mortgage foreclosure documentation").

to comply with even the most basic legal requirements of the bankruptcy system. It is the lenders' responsibility to comply, and this Court's responsibility to ensure compliance, with both the substantive and procedural requirements of the Bankruptcy Code.[19]

■ In this case, the Bankruptcy Court passed on the opportunity to consider whether Appellee had standing to seek relief under § 362(j), apparently concluding that standing was not at issue. However, standing is a threshold issue in every federal case,[20] on which the party seeking relief bears the burden of proof.[21] The right to seek relief from the federal courts requires proof of the existence of both Constitutional and "prudential" standing.[22] Constitutional, or "Article III" standing embodies the concept of "case or controversy," and requires proof of an "injury in fact that a favorable judgment will redress."[23] Prudential standing, which is what we are primarily concerned with here, is the application of limits to the exercise of a court's jurisdiction, and is based on the concept that one may only assert his own rights.[24] Thus, prudential standing often depends on whether the statutory provision upon which a claim is based "properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[25] Accordingly,

absent a determination of prudential standing, a substantive judicial determination by the Bankruptcy Court cannot be supported.

### B. Issue 2: Whether Appellee had standing to file the Application.

■ Some additional consideration of prudential standing is necessary to determine this issue. Prudential standing for those seeking a bankruptcy court's assurance that the automatic stay does not preclude assertion of an interest in a particular property is established by statute. In this case, Appellee's entitlement to the relief it sought in its Application is governed by § 362(j), which provides that *"[o]n request of a party in interest,* the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated" (emphasis added). The relief granted pursuant to this provision is often called a "comfort order,"[26] as it is typically needed by claimants to satisfy state courts that the underlying dispute may proceed despite pendency of a bankruptcy case.

The Bankruptcy Code does not define the term "party in interest," and little has been written regarding that standard within the context of § 362(j). However, the identical standard applies to requests for relief from stay pursuant to § 362(d),[27] a

---

19. *In re Maisel,* 378 B.R. 19, 20–21 (Bankr. D.Mass.2007).

20. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

21. *In re Miller,* 666 F.3d 1255, 1261 n. 4 (10th Cir.2012).

22. *The Wilderness Soc'y v. Kane County,* 632 F.3d 1162, 1168 (10th Cir.2011).

23. *Id.*

24. *Id.*

25. *Warth,* 422 U.S. at 500, 95 S.Ct. 2197.

26. *See, e.g., In re Hill,* 364 B.R. 826, 827 n. 1 (Bankr.M.D.Fla.2007) ("comfort order" is a term of art that describes an order "confirming an undisputed legal result"). *See also, In re Alvarez,* 432 B.R. 839, 841 (Bankr.S.D.Cal. 2010) (describing § 362(j) as a "comfort order provision"); *In re Grossi,* 365 B.R. 608, 610 (Bankr.E.D.Va.2007) (§ 362(j) comfort orders are limited to stay terminations pursuant to § 362(c)).

27. This provision allows bankruptcy courts to grant relief from operation of the automatic stay on various grounds, "[o]n request of a party in interest and after notice and a hearing."

context in which much has been written. We consider an analysis of the "party in interest" standard within this closely related context to be highly relevant to our inquiry. Recently, the Tenth Circuit Court of Appeals addressed the issue of standing and the proof needed to establish it, within the context of a § 362(d) request for relief from stay, holding that: 1) "in order to invoke the court's power to award relief under § 362(d), a party must be either a creditor or a debtor of the bankruptcy estate"; 2) a creditor is someone that has a claim against the debtor; and 3) a claim is a right to payment.[28] In *Miller*, as in the present case, the creditor submitted a copy of a promissory note that had been endorsed in blank by the original lender, but had failed to prove that it was in possession of the original note. The *Miller* court held, under the Uniform Commercial Code,[29] that physical possession of bearer paper, such as a note endorsed in blank, is "essential because it constitutes proof of ownership and a consequent right to payment."[30] Despite showing that the note had been endorsed in blank, the *Miller* claimant had failed to prove that it "in fact obtained physical possession of the original Note from [the initial lender], either voluntarily or otherwise," and had therefore failed to establish that it was a holder of the note with a right to assert a claim against the debtor. Thus, the evidence before the bankruptcy court below was insufficient to establish that the claimant was a "party in interest," and the grant of its request for relief from stay was deemed an abuse of discretion.

◼ Oklahoma law also provides that physical possession of a bearer instrument is essential to asserting a claim based on that document.[31] Although Appellee appears to have proffered the original Note and mortgage at the hearing in the Bankruptcy Court, the court did not inspect the documents, nor were they made a part of the court's record.[32] Appellee also represented, in an unsworn pleading, that it had possession of the originals and had shown them to the trustee at the creditors' meeting. However, an unsworn pleading in a contested matter is not evidence upon which a factual determination may be made.

◼ It should be noted that it is well-established that an order granting stay relief "is not a final adjudication of the parties' various rights and interests in the subject property."[33] Rather, stay proceedings only determine whether the party

**28.** *In re Miller*, 666 F.3d 1255, 1260–62 (10th Cir.2012).

**29.** The U.C.C. has been adopted in most jurisdictions, including both Colorado (Colo.Rev. Stat. §§ 4–1–101 to 4–11–102) and Oklahoma (Okla. Stat. Ann. tit. 12A, §§ 1–101 to 11–107).

**30.** *Miller*, 666 F.3d at 1263–64.

**31.** *See* Okla. Stat. Ann. tit. 12A, §§ 3–201, 3–203, and 3–301 (1991). *See also Deutsche Bank Nat'l Trust v. Brumbaugh*, 270 P.3d 151, 153–54 (Okla.2012) (entitlement to enforce a note is essential to plaintiff's standing to seek foreclosure, and enforcement requires possession).

**32.** By our decision today, we are not suggesting that the original note must be placed into evidence, as that is not required under Federal Rule of Evidence 1003. We are, however, holding that the bankruptcy court must make a cognizable determination of standing in a contested matter like this one, which requires some review of the standing documents, whether they be admitted into evidence or proffered to the court without objection. *See In re Pak*, No. CC–11–1108, 2011 WL 7145763, at *3 (9th Cir. BAP Dec.14, 2011) (original promissory note not required to establish possession when authenticity was not challenged and no evidentiary objection was made to proffered copy).

**33.** *In re Castro*, No. CO–11–040, 2012 WL 611437, at *4 (10th Cir.BAP Feb. 27, 2012).

seeking relief has a "colorable claim," which is then fully adjudicated in the state court.[34] Thus, the appropriate place for a full and final adjudication of the parties' respective interests in the Property is the Oklahoma courts. The issue, then, is what level of proof is required to meet the prudential standing requirement of "party in interest," upon which a bankruptcy court either grants or denies stay relief. One court recently answered this question as follows:

> [G]iven the summary and expedited nature of stay litigation, and its non-preclusive effect, the evidence necessary to establish standing to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage; however, standing should not require evidence which would be necessary to prevail over a claim objection or to prevail in an adversary proceeding asserting

that the claimant does not hold a valid, perfected and enforceable lien.[35]

We agree with this analysis. Appellee must prove that it has a "colorable claim" to an ownership interest in the Property or, in other words, "a facially valid security interest," [36] in order to establish its standing to seek a § 362(j) comfort order. Proof of the existence of a colorable claim in this case necessarily requires Appellee to prove that it has a "facially valid security interest" under Oklahoma law.

## V. CONCLUSION

We conclude that, absent a determination of Appellee's standing by the Bankruptcy Court, its decision must be and hereby is reversed. This matter is therefore remanded for further determinations consistent with this decision. Based on this ruling, we do not consider the Debtor's third argument regarding the status of the stay under § 362(c)(3).

34. *Id.*

35. *In re Escobar,* 457 B.R. 229, 239 (Bankr. E.D.N.Y.2011) (recognizing possible departure from standard required by *In re Veal,* 450 B.R. 897 (9th Cir. BAP 2011), *id.* at n. 8).

36. *In re Utah Aircraft Alliance,* 342 B.R. 327, 332 (10th Cir. BAP 2006).