In re Ever M. ROBERTS, Debtor.

U.S. Bank, National Association, as Trustee c/o Homecomings Financial Network, Servicer Asset Link, Movant,

v.

Ever M. Roberts and Sally Zeman, Chapter 13 Trustee, Respondents.

No. 06–19441 HRT.

United States Bankruptcy Court, D. Colorado.

April 23, 2007.

Derek W. Cole, Aurora, CO, for Debtor.

## ORDER GRANTING MOTION FOR RELIEF FROM STAY

HOWARD R. TALLMAN, Chief Bankruptcy Judge.

This matter comes before the Court on Movant's *Amended Motion for Relief from Automatic Stay* (docket # 44) [the "Motion"]. The Court held a final hearing on the Motion on March 30, 2007. The Chapter 13 Trustee did not respond to the Motion and did not participate in the hearing.

The Movant, U.S. Bank National Association, as Trustee, alleges that it is the owner of real estate located at 2816 Williams Street, Denver, Colorado, [the "Property"] following its purchase of the Property at a foreclosure sale. It seeks relief from the automatic stay in order to proceed with an eviction action against the Debtor.

### I. BACKGROUND

The Debtor has lived in the Property as her home for approximately 24 years. At a time when she was experiencing financial difficulties, she sought to refinance the Property and, on July 21, 2005, the Debtor executed an Adjustable Rate Note [the "Note"] in favor of EquiFirst Corporation ["EquiFirst"] in the amount of $247,500.00. At the same time, Debtor executed a Deed of Trust naming Mortgage Electronic Registration Systems, Inc., ["MERS"] as beneficiary under the Deed of Trust. MERS served as a nominee for EquiFirst.

The Debtor's obligations on the Note went into default and the Movant initiated foreclosure proceedings on May 3, 2006, by serving its Notice of Election and Demand for Sale by Public Trustee upon the Public Trustee for the City and County of Denver. On May 5, 2006, the Movant made an application to the District Court for the City and County of Denver, under CoLo. R. Civ. P. 120 ["Rule 120"], for an order authorizing sale of the Debtor's Property under the default provisions of the Deed of Trust and on June 11, 2006, that court entered its Order Authorizing Sale. On September 12, 2006, Movant purchased the Property at the Public Trustee's sale and, on that date, the Public Trustee issued the Movant a Public Trustee's Certificate of Purchase. On December 5, 2006, after the expiration of the time period allowed for the Debtor to redeem the Property, Movant received a Public Trustee's Deed confirming the foreclosure sale and conveying the Property to the Movant. Thereafter, on December 15, 2006, the Debtor filed her Voluntary Petition under chapter 13 of the Bankruptcy Code.

### II. PRELIMINARY MATTERS

#### A. Motion to Continue

■ Prior to the Court taking evidence in this matter, Debtor objected to going forward with the hearing due to Movant's failure to produce certain documents. The Court took the matter under advisement. The Court construes Debtor's objection to

be a motion to continue and the Court will deny the motion.

Debtor sought documentation with respect to the working relationship between the Movant and Asset Link, the party which had initially been named as the movant with respect to this Motion. But Asset Link is no longer the movant in this matter. As far as is apparent to the Court, Asset Link was initially named as the movant in error. None of the documents offered into evidence at hearing give any indication that Asset Link has any interest in the Property. The evidence indicates that Asset Link's role is as a sub-servicer employed to market the Property post-foreclosure.

The Court has not been made aware of any formal document request made of the Movant by the Debtor. Nor did the Debtor make any motion to compel the production in order for the Court to take action prior to the hearing. But, more importantly, Debtor could not have been prejudiced by any failure of the Movant to provide the documentation she sought. The nature of Movant's relationship with Asset Link played no role in the Court's review of this matter.

### B. Objection to Amendment

█ Debtor objected to the "amendment" of the Motion which substituted the original movant, Asset Link, with the current Movant, U.S. Bank, National Association, as Trustee. The Court shares Debtor's frustration that Movant's counsel apparently had some difficulty figuring out the identity of its client in this matter. But Debtor cannot have it both ways. She quite properly sought clarification of Asset Link's role in this transaction. That clarification came in the form of multiple amendments to the Motion. The Motion was ultimately amended on March 2, 2007, to reflect the name of the Movant in its current form. The amendments to the Motion served to inform both the Debtor and the Court of the true party in interest in this matter.

Debtor suffered no prejudice by those amendments to the Motion. The Court has deemed the Motion to have been filed on March 2, 2007, and has provided that, for the purposes of § 362(e), the automatic stay in this case would run until May 1, 2007, or until the Court issues its order in this matter. Order (docket # 60), April 2, 2007. That way, the 60 day time limitation reflected in § 362(e) did not begin to run until the filing of the final amendment so the Debtor is not harmed by the confusion. The Debtor's objection to the amendments is overruled.

### C. Motion for Judgment as a Matter of Law

At the close of Movant's evidence, Debtor moved for a judgment in her favor as a matter of law. Debtor contends that Movant failed to adduce sufficient evidence to entitle it to judgment as a matter of law. The Court took the motion under advisement. The motion will be denied. As is evident from the following discussion, the Movant produced ample evidence to support a judgment in its favor.

### III. DISCUSSION

### A. Informal Proof of Claim

The Debtor desires for this Court to look behind the Public Trustee's Deed and examine the propriety of the foreclosure proceedings conducted under Colorado state law. The Debtor argues that the filing of the Movant's Motion constitutes an informal proof of claim and that whenever a proof of claim is objected to, the burden falls upon the claimant to prove its claim. On its face, that argument may have a grain of logic to it but, in fact, it fails on at least two different levels.

█ First of all the Debtor's premise that a motion for relief from stay is neces-

sarily recognized as an informal proof of claim is faulty. The case of *In re Reliance Equities, Inc.*, 966 F.2d 1338 (10th Cir. 1992), sets out the standards used by bankruptcy courts in the Tenth Circuit to assess whether an informal proof of claim may be recognized:

1. the proof of claim must be in writing;

2. the writing must contain a demand by the creditor on the debtor's estate;

3. the writing must express an intent to hold the debtor liable for the debt;

4. the proof of claim must be filed with the Bankruptcy Court; and

5. based on the facts of the case, it would be equitable to allow the amendment.

*Id.* at 1345. A cursory examination of the Motion confirms that it contains no demand on the estate and no evidence of an intent to hold the Debtor liable on a claim. No demand for payment of any kind is contained in the Motion. The Motion is based solely upon the Movant's claim that it is the owner of the Property. Under the *Reliance Equities* standard, there may be circumstances where a motion for relief from stay could constitute an informal proof of claim, but those circumstance would be rare indeed. *See In re Anchor Resources Corp.*, 139 B.R. 954, 956–57 (D.Colo.1992).

A bankruptcy court's designation of a creditor's filing as an informal proof of claim is an equitable remedy to prevent forfeiture of a creditor's claim. The Court finds no cases where a court has allowed a debtor to employ this equitable doctrine as a sword to place additional burdens on a creditor. Here the Movant is not even acting in the role of a creditor but as the owner of the Property.

Even if it was the case in the Tenth Circuit that a motion for relief from stay was routinely considered to constitute an informal proof of claim, it still would not logically follow that the movant in a relief from stay proceeding must prove up its claim. The requirement for a claimant to prove its debt is applicable to proceedings on a claim objection. But proceedings on a motion for relief from stay are a different matter entirely. The burdens of proof and elements for granting of stay relief are set out in § 362 and those are the standards that guide the Court in this proceeding. Under § 362(g), the Movant's burden is to prove the Debtor's lack of equity in the Property. The burden as to all other issues is upon the Debtor.

### B. The Foreclosure Process

#### 1) The Note Indorsements

Even if it were necessary or appropriate for this Court to pass judgment on the state law foreclosure proceedings, the evidence submitted to this Court shows no defect in those proceedings. As is customary in the mortgage industry, EquiFirst indorsed the Note over to another entity. The Court heard testimony from an employee of Homecomings Financial Network, ["Homecomings"] the loan servicer. She believed that the Note had originally been indorsed in blank and had later come into the possession of Residential Funding Corporation ["RFC"]. Then RFC indorsed the Note over to the Movant, U.S. Bank, National Association, as Trustee. The Note indorsements look something like the following:

Without Recourse, Pay to the Order of: RESIDENTIAL FUNDING CORPORATION
 PAY TO THE ORDER OF

U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By /s/ Judy Faber

Judy Faber, Vice President

EquiFirst Corporation
By: /s/ Sally Jo Handy

~~Richard Farnon~~ Sally Jo Handy
Assistant Vice President

■ There is no question that the form of the indorsements is confusing. However, the Court interprets the indorsements differently than Movant's witness.[1] The Court does not believe the Note was indorsed in blank. Because "RESIDENTIAL FUNDING CORPORATION" appears on the same line following "Without Recourse, Pay to the Order of:," it appears to the Court that the initial indorsement was from EquiFirst directly to RFC. That indorsement was signed by one Sally Jo Handy, an Assistant Vice President of EquiFirst Corporation. Directly below the name "RESIDENTIAL FUNDING CORPORATION," there appears a second complete indorsement from RFC to the Movant. Any other interpretation of the indorsements would mean that the first instance of the phrase "RESIDENTIAL FUNDING CORPORATION" would be mere surplus because it serves no function whatever as part of the indorsement over to the Movant.

Of course, even if the initial indorsement had been in blank, that simply would have turned the Note into "bearer paper" such that whoever came into possession of it would have had the legal right to negotiate it either by transfer of possession or by a special indorsement. COLO.REV.STAT. § 4–3–205. Thus, whether or not the initial indorsement was in blank, is of no conse-

quence. An inspection of the Note indorsements shows unambiguously that the final indorsement on the Note makes it payable to the Movant.

The Debtor complains that no date appears on either indorsement. But the Court does not find the absence of a date to be material. The Debtor directs the Court to no authority for a requirement that a date must appear on a note indorsement, nor does the Court find any such requirement. *See,* COLO.REV.STAT. § 4–3–204. It is apparent that the final indorsement on the Note is to the Movant and the Movant is reflected as the owner of the evidence of debt when the Notice of Election and Demand for Sale by Public Trustee was filed with the office of the Public Trustee for the City and County of Denver. Therefore, it is clear that the Movant was the owner of the indebtedness evidenced by the Note at the time the foreclosure was commenced in May of 2006.

*2) The Deed of Trust*

■ At all times between the execution of the Deed of Trust and when it was ultimately extinguished through foreclosure, MERS remained the beneficiary of that instrument. But, MERS acted "solely as nominee for Lender and Lender's successors and assigns." The Deed of Trust provides that

---

1. The witnesses testimony on this point was not helpful to the Court because she did not participate in or witness the indorsements.

Furthermore, it is the Court's function to interpret documents which are entered into evidence.

Borrower understands and agrees MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Deed of Trust, p3.

Debtor complains that the public record does not disclose the identity of the true owner of the beneficial interest in the Deed of Trust. But, while true, that fact is not material for at least two reasons. First, it is clear from an examination of the face of the Deed of Trust that MERS acted solely in a representative capacity for the original lender, EquiFirst, as well as its successors and assigns. Thus, MERS was empowered to act on behalf of whoever was the equitable owner of the rights in the Deed of Trust. In fact, the Deed of Trust itself makes clear that MERS, operating in its representative capacity, may, if necessary, exercise all of the substantive rights of the of the party who holds the beneficial ownership of the Deed of Trust. The Deed of Trust spells out the fact that those rights include the right to foreclose and sell the Property.

Second, even though MERS was granted all of those powers by the Debtor when she signed the Deed of Trust, under Colorado statutory law, it is the "owner of an evidence of debt which is secured by a deed of trust containing a power of sale" that is entitled to initiate a foreclosure proceeding by supplying the required notices and evidence of the debt to the "public trustee of the county wherein such property is located." COLO.REV.STAT. § 38–38–101. The evidence shows that the Movant was the owner of the Note and that the Movant initiated the foreclosure action by giving notice to the public trustee demanding that the trustee foreclose on the Property.

### 3) The Rule 120 Hearing

█ The Colorado Rules of Civil Procedure provide for a process whereby a party in interest may file an action seeking judicial authorization to conduct a foreclosure sale. COLO. R. CIV. P. 120. The Movant's attorneys utilized Rule 120 and filed a *Verified Motion for Order Authorizing Sale.* The evidence shows that the Debtor was given notice of the Rule 120 hearing but made no response. Without opposition, the state court entered the *Order Authorizing Sale.*

The Debtor testified during the hearing on this Motion. At no time did she deny that she was in default on her obligations under the Note. She did complain that the loan she was given on the Property was greater than the Property's value; that the loan payments amounted to fully half of her take-home pay; and that Movant would not allow her to sell the Property during the redemption period for a price less than what was owed on the Note without remaining personally liable for the deficiency balance.

None of those complaints provide a legal basis to invalidate the Debtor's obligations to the Movant. The Debtor herself executed the Note and Deed of Trust and bound herself to their terms. Regardless of the unfortunate circumstances that may have led the Debtor to enter into the loan transaction, her contractual liabilities under the Note and Deed of Trust are no less binding because of those factors.

### C. The Real Party in Interest

Debtor's argument, in opposition to the Motion, boils down to her confusion over

who the real party in interest was with respect to her home mortgage.[2] But, it is readily apparent on the face of the relevant documents that the Movant was, at the time of the mortgage foreclosure, the owner of the Note and was the party who was entitled under Colorado law to initiate the foreclosure proceedings. COLO.REV. STAT. § 38–38–101. Certainly the Debtor's confusion is understandable. It is probably more common than not for the original lender in a home mortgage transaction to sell the note and mortgage to another party. Not only that, but a different party in many cases will perform the loan servicing and actually receive the loan payments on behalf of the holder of the indebtedness. In this case, yet another party became involved after the Property went through foreclosure to deal with post-foreclosure marketing of the Property.

Thus, in this case, after EquiFirst originated the Note as the initial lender, it indorsed the Note over to RFC. RFC subsequently indorsed the Note over to the Movant. Homecomings acted as the loan servicer and collected the Note payments from the Debtor. As is typical, the Movant, as owner of the indebtedness on the Note, purchased the Property at the foreclosure sale. Following foreclosure, an entity named Asset Link became involved in the post-foreclosure marketing of the Property. But the involvement of Homecomings and Asset Link is really just a distraction. It is plain on the face of the documents that the Court has examined that the Movant is the real party in interest in this matter and that the Movant had the legal right to foreclose its interest in the Property.

*D. Recordation Under the Uniform Commercial Code*

■ Debtor also argues that the Note assignment should have been recorded in the Secretary of State's office under the Uniform Commercial Code ["UCC"]. The Debtor appears to be mixing apples and oranges here; and seems to confuse the Note with the Deed of Trust. There is no question that the Note is a negotiable instrument subject to Article 3 of the UCC. *See* COLO.REV.STAT. § 4–3–104. But Article 3 is not a recording statute. It covers generally the formal requirements for negotiable instruments and issues of liability and enforcement. In particular, Article 3 is devoid of any recording requirements applicable to negotiable instruments. Article 9 of the UCC, on the other hand, most certainly is a statutory scheme that includes requirements for the recordation

**2.** Here, the Movant's counsel created a good deal of the confusion by initially filing the *Motion for Relief from Automatic Stay* under the name of Asset Link and making assertions in that motion that Asset Link was the holder of a lien or security interest in the Property and that notice of its lien interest was given by recording the Deed of Trust in the public records. Of course the Movant's lien in the property was extinguished pre-petition by way of foreclosure and the evidence showed that Asset Link never held a lien in the Property let alone recorded notice of any such lien in the public records. That original motion also misstated that the redemption period on the Property had been extended by law due to the filing of the bankruptcy petition when, in fact, the redemption period had expired and the Public Trustee's Deed had been issued and filed for record prior to the commencement of the Debtor's bankruptcy case. The filing of motions containing such standard boilerplate is a practice that this Court does not encourage. This case is an example of the problems it creates. The Debtor and the Court were misled by the inaccurate allegations and the Movant was delayed in obtaining the relief that it sought. The Court finds no evidence that the inaccurate information was intentional. Nonetheless, it made it more difficult for the Debtor to respond to the Motion and unnecessarily used the Court's time and resources because the Court needed to schedule additional hearings.

of security interests. However, Article 9 provides that:

> This article does not apply to:
>
> . . .
>
> (11) The creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, except to the extent that provision is made for:
>> (A) Liens on real property in sections 4–9–203 [3] and 4–9–308; [4]
>> (B) Fixtures in section 4–9–334;
>> (C) Fixture filings in sections 4–9–501, 4–9–502, 4–9–512, 4–9–516, and 4–9–519; and
>> (D) Security agreements covering personal and real property in section 4–9–604; [5]

COLO.REV.STAT. § 4–9–109(d) (2005). Thus, the UCC does apply to this transaction to the extent that it governs matters pertaining to the negotiability and enforcement of the Note, but it has no application to the Deed of Trust on the Property and does not impose a requirement that any of the documents in this transaction must be recorded in the Colorado Secretary of State's office in order to be enforceable.

*E. The Public Trustee's Deed is Sufficient Evidence of Movant's Interest*

 Even though the Court has examined the Note, Deed of Trust, and all of the foreclosure documents, the most significant document that the Court took into evidence with respect to these proceedings is the Public Trustee's Deed. That deed is dated December 5, 2006, and shows that the Movant is the outright owner of the Property. After having examined those documents, the Court has seen nothing to make it believe that the foreclosure on the

Property was not conducted fully in accordance with state law by the party that was entitled to enforce the Debtor's obligations on the Note. But, even if the Court would have noted some irregularity in that process, this Court is not empowered to look behind the Public Trustee's Deed in the context of this relief from stay hearing.

 First of all, a hearing on a motion for relief from stay is a summary proceeding and is not a proceeding where the bankruptcy court adjudicates substantive rights. In the case of *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir.1994), the court said "a hearing on a motion for relief from stay is merely a summary proceeding of limited effect. . . ." *Id.* at 33. It went on to explain that

> a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history, and the case law all direct that *the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims.* Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims

---

**3.** A security agreement covering timber to be cut must include a description of the land on which the timber is located.

**4.** Among other things, this section covers perfection of agricultural liens.

**5.** This section covers procedures for enforcing security interests after default where the collateral includes both real and personal property. In that case, a creditor may utilize Article 9 to enforce its interest in the personal property only.

elsewhere without violating the automatic stay.

*Id.* at 33–34 (emphasis added). Section 362 of the Bankruptcy Code stays actions against a debtor; that debtor's property; or property of the bankruptcy estate. 11 U.S.C. § 362(a). In seeking relief from the automatic stay, the Movant is asking this Court to determine whether the requirements for lifting the stay under § 362(d) have been satisfied. The consequence of this Court lifting the stay is that, once the parties are free from the automatic stay, they can proceed to seek a determination of their substantive rights in the state court. The issues of real property ownership; the rights of parties to a mortgage loan transaction; and rights of parties to a foreclosure action, are all matters of Colorado state law in this case. After this Court lifts the stay, all of the legal rights and obligations that either the Movant or the Debtor have under state law remain intact and nothing that this Court can do in the context of a relief from stay hearing can alter those legal relationships. It merely frees the parties to enforce their rights in the state court.

 Equally important is the fact that, as a federal court, this Court must give full faith and credit to the laws and judicial proceedings of the states. 28 U.S.C. § 1738. This Court is not and, by law, cannot be a court of appeal for those who are disappointed with the outcome of state court judicial proceedings and legal processes. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In essence, the Debtor is asking this Court to review proceedings that have already been conducted to a conclusion under the Colorado foreclosure procedures.

 The Public Trustee's Deed is a manifestation of the fact that a foreclosure process that is fully controlled by Colorado state law has run its course. The state law foreclosure process afforded the Debtor with due process rights and notice of the pending sale. The Debtor allowed the foreclosure proceedings to run their course without raising any objection or bringing any action on the state level, including any appropriate appeals from state court orders. The Public Trustee's Deed is "prima facie evidence of compliance with all statutory requirements for the sale and execution of the deed and evidence of the truth of the recitals contained in such deed." Colo.Rev.Stat. § 38–38–504. Under the Full Faith and Credit statute, 28 U.S.C. § 1738, and the *Rooker–Feldman* doctrine, even if the nature of a relief from stay proceeding would otherwise allow this Court to address the merits of the Movant's claim to the Property, this Court is bound to honor the Public Trustee's Deed because, under Colorado State Law, it is prima facie evidence of Movant's ownership of the Property.

 In short, both because of the summary nature of these relief from stay proceedings and because this Court is bound to give full faith and credit to the Public Trustee's Deed, that deed is sufficient evidence of the Movant's ownership of the Property. It was issued to the Movant prior to the filing of the Debtor's bankruptcy petition on December 15, 2006. At the time that the Debtor filed her bankruptcy case, she possessed no ownership interest in the Property. The foreclosure sale had taken place; the redemption period had lapsed; and a deed had been issued to the Movant. The Public Trustee's Deed shows that it was filed for public record on December 5, 2006, the same day that it was issued. In the case of *Mt. Carbon Metro. Dist. v. Lake George Co.,* 847 P.2d 254 (Colo.Ct.App.1993), the court observed that "[a]fter the redemption period for

foreclosed property expires, title to the property sold vests in the holder of the certificate of purchase. The foreclosure is then final and all of the owner's right, title, and interest in and to the land is extinguished." *Id.* at 256–57; *see, also,* COLO. REV.STAT. § 38–38–501.

Thus, the posture of the case that is currently before this Court is very different than if a bankruptcy petition had been filed prior to the foreclosure sale or even during the redemption period. The Court finds, on the basis of the evidence presented, on the petition date, the Debtor possessed no ownership interest in the Property. Thus, no legal or equitable interest in the Property became property of the Debtor's bankruptcy estate.

### F. Movant Has Met its Burden Under § 362(d)

Given the foregoing, the Court must determine whether or not the Movant has met its burden to entitle it to a lifting of the automatic stay. Section 362(d) provides that

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d). The burden of proof is allocated as follows:

> In any hearing under subsection (d) or (e) of this section concerning relief from

the stay of any act under subsection (a) of this section—

> > (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

The Court finds that the Movant is entitled to relief from the automatic stay under either § 362(d)(1) or § 362(d)(2).

As to § 362(d)(2), the Movant's deed to the Property is sufficient to demonstrate to the Court that the Debtor has no equity in the Property. Moreover, the Debtor submitted no evidence to the Court from which it could find that the Property is necessary for an effective reorganization. Indeed, it is difficult for this Court to imagine what evidence the Debtor might have provided to demonstrate that a home, in which the Debtor holds no ownership interest, could be necessary to the Debtor's reorganization effort. It is much more likely that the Debtor's reorganization can be successful if the Debtor is simply paying rent rather than trying to cure a mortgage deficiency and make current payments on a mortgage debt, which the Debtor testified is greater than the value of the Property.

Furthermore, Movant has shown that cause exists for the lifting of the automatic stay under § 362(d)(1). The Debtor's interest in the property is an interest based only on bare possession. She has no ownership interest in the Property. Fee simple ownership of the Property clearly vested in the Movant pre-petition under Colorado state law. The Tenth Circuit Court of Appeals has said that

> At the very least, a mortgage debtor must have some legal or equitable interest in property which enters the bank-

 

ruptcy estate if he hopes to retain it through the bankruptcy cure provisions. No court has held that debtors can use the bankruptcy cure provisions to recover property in which they no longer have any interest under state law.

*In re Thompson,* 894 F.2d 1227, 1229 (10th Cir.1990) (citations omitted). Because the Debtor's ownership interest in the Property fully terminated prior to the filing of her bankruptcy petition, cause exists for lifting of the stay. *See In re Spencer,* 115 B.R. 471, 484–85 (D.Del.1990); *In re Haynes,* 283 B.R. 147, 155–56 (Bankr. S.D.N.Y.2002); *In re Eclair Bakery Ltd.,* 255 B.R. 121, 136–37 (Bankr.S.D.N.Y. 2000); *In re Layton,* 138 B.R. 219, 224 (Bankr.N.D.Ill.1992); *In re Jones,* 121 B.R. 122, 124–25 (Bankr.M.D.Fla.1990).

Therefore, it is

**ORDERED** that Debtor's motion to continue these proceedings is DENIED; it is further

**ORDERED** that Debtor's objection to Movant's amendment of its Motion is OVERRULED; it is further

**ORDERED** that Debtor's motion for judgment as a mater of law at the close of Movant's evidence is DENIED; and it is further

**ORDERED** that the *Amended Motion for Relief from Automatic Stay* filed by U.S. Bank, National Association, as Trustee, is GRANTED; pursuant to 11 U.S.C. § 362(d), the automatic stay in this case is lifted with respect to the Property legally described as

Lot 11, and the North half of Lot 12, Block 26, Downing Addition, City and County of Denver, State of Colorado

and commonly known as 2816 Williams Street, Denver, Colorado 80205, so that the Movant may proceed with its eviction action.