The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 21, 2026

**2026 COA 38**

**No. 24CA2217, *Bank of Colorado v. Lebsock* — Trusts — Rights
of Beneficiary's Creditor or Assignee — Spendthrift Provisions;
Creditors and Debtors — Judgments — Final Judgment on the
Merits — Issue Preclusion — Claim Preclusion; Bankruptcy**

A division of the court of appeals determines that creditors
cannot reach a beneficiary's interest in a trust when the trust
contains a valid spendthrift provision.  The division also concludes
that a federal bankruptcy proceeding did not bar, in a state replevin
action, the argument that a creditor could not reach the
beneficiary's interest in the trust.

COLORADO COURT OF APPEALS **2026 COA 38**

Court of Appeals No. 24CA2217
Logan County District Court No. 20CV30064
Honorable Carl S. McGuire III, Judge

Bank of Colorado,

Plaintiff-Appellee,

v.

David Wade Lebsock, a/k/a David W. Lebsock, a/k/a David Lebsock,

Defendant-Appellant,

and

Sandra E. Kutz as trustee of the Janice M. Lebsock Irrevocable Income-Only Trust,

Intervenor-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Kuhn and Sullivan, JJ., concur

Announced May 21, 2026

Spencer Fane LLP, John O'Brien, Scott C. Sandberg, Denver, Colorado, for Plaintiff-Appellee

Haddon, Morgan and Foreman, P.C., Adam Mueller, James E. Fogg, Denver, Colorado, for Defendant-Appellant

Wade Ash LLC, Jody J. Pilmer, Letitia M. Maxfield, Greenwood Village, Colorado, for Intervenor-Appellant

Stinson LLP, Zane A. Gilmer, Denver, Colorado, for Amicus Curiae Colorado Bankers Association

McGraw Law PLLC, Caryn McGraw Turner, Denver, Colorado, for Amicus Curiae Colorado Bar Association Trust & Estate Section

¶ 1     Defendant, David Wade Lebsock, and intervenor, Sandra E. Kutz, appeal several of the district court's orders issued in a replevin action brought by plaintiff, the Bank of Colorado (the Bank), against David and other debtors.[1]  We reverse the portion of the court's order requiring the preferential transfer of David's trust proceeds to the Bank.  We remand for the district court to give effect to our decision.

## I.     Background

¶ 2     In 2019, Janice M. Lebsock settled the "Janice M. Lebsock Irrevocable Income-Only Trust" (the Trust).  Janice and Sandra were the Trust's cotrustees.  During Janice's lifetime, she was the Trust's sole beneficiary and was entitled to discretionary distributions of the Trust's income for her "care and well-being."  After her death, section 2.2 of the Trust directed the trustees to distribute the Trust's remaining principal and income as follows:

> (a) to or for the benefit of [Janice's] children or their descendants, as [Janice] shall appoint by Will, which Will specifically refers to this power of appointment; and

---

[1] Because several individuals discussed in this appeal share last names, we use their first names in the interest of clarity and mean no disrespect thereby.

(b) to the extent that [Janice] ha[s] not exercised this power of appointment by [her] Will, the Trustees shall pay the remaining principal and undistributed income to [her] children in equal shares, per stirpes.

The Trust named Janice's three living children as beneficiaries upon her death: Gregory Lebsock, Sandra, and David. It also included the following provision (at section 4.2): "All principal and income shall, until actual distribution to the [b]eneficiary, be free of debts, contracts, alienations, and anticipations of any beneficiary, and the same shall not be liable to any levy, attachment, execution, or sequestration while in the possession of the Trustees."

¶ 3     In a 2020 replevin action that was initially unrelated to the Trust, the Bank sued David and several other parties[2] to foreclose on collateral and collect on twenty-three commercial loans that were in default. As relevant here, the Bank sought to foreclose on David's general intangibles in which he had granted the Bank a security interest in an April 2020 forbearance agreement. In early 2021, the district court appointed a receiver and entered a

---

[2] Although there were multiple debtors in the replevin and bankruptcy proceedings, we discuss the proceedings only as they relate to David because the other debtors did not join this appeal.

stipulated order for possession, granting the receiver authority to take and deliver David's "Personal Property Collateral" — including David's "General Intangibles" — to the Bank.

¶ 4 In February 2022, David petitioned for bankruptcy in federal bankruptcy court. The state court replevin action was stayed pending the bankruptcy proceeding's outcome. Ultimately, the bankruptcy trustee and the Bank reached a settlement agreement that permitted lifting the automatic stay imposed by the bankruptcy court to allow the Bank to foreclose on its security interests in David's collateral, including "[a] beneficial interest in the [Trust]," in the replevin action. David (acting independently of the bankruptcy trustee) objected to lifting the bankruptcy stay, arguing that the Bank lacked a valid security interest in the Trust. The Bank responded that David lacked standing to oppose the stay relief motion, and the bankruptcy court agreed.

¶ 5 The bankruptcy court held that David lacked prudential bankruptcy standing to oppose lifting the stay, which — as the court explained — differs from traditional standing in federal court. *See In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998); *In re Reynolds*, 470 B.R. 138, 147 (Bankr. D. Colo. 2012)

3

("[A] debtor is a party in interest with standing to object to creditor claims when successful claim objections may result in a return of assets to the debtor."). The bankruptcy court then concluded that David's only bases for standing were two objections that no longer applied. The court did not address the parties' arguments about the Bank's security interest in the Trust.

¶ 6    After concluding that David lacked standing, the bankruptcy court lifted the stay and allowed the Bank to foreclose on David's collateral, which purportedly included "[a] beneficial interest in the [Trust]." On the Bank's motion, the district court then vacated its order staying the replevin action. The parties seem to agree that the Bank's motion to vacate this order was the first time David's interest in the Trust was explicitly mentioned in the replevin action.

¶ 7    The Bank then moved for a "comfort order" and payment instructions.[3] It argued that David pledged his interest in the Trust

---

[3] We use the term "comfort order" because that terminology appears in the record. However, it is unclear from the record what the Bank meant by this. Bankruptcy cases suggest that a comfort order is an order confirming that an automatic stay has been lifted, which does not appear to be what the Bank was requesting. *See In re Grossi*, 365 B.R. 608, 610 (Bankr. E.D. Va. 2007).

as collateral via the forbearance agreement, so it asked the district court to order Sandra (as trustee) to pay David's distributions from the Trust to the Bank or, upon Janice's death, to the receiver pursuant to the Trust's terms. It also argued that David lacked standing in the replevin action because his interest in the Trust "was surrendered to [the bankruptcy] Trustee, subject to the Bank's lien." David objected, arguing that bankruptcy standing does not apply in state court actions and that the Bank's lien could not attach to the Trust because the Trust had a valid spendthrift provision.[4]

¶ 8     Sandra, in her capacity as trustee of the Trust, then intervened in the replevin action. She sought declaratory relief, requesting the following declarations: (1) the Trust contained a valid spendthrift provision; (2) David "could not and did not, validly assign his future beneficial interest in the [Trust] to his creditors";

---

[4] Colorado has long defined a spendthrift trust as one "created to provide a fund for the maintenance of the beneficiary, and at the same time to secure it against his improvidence or incapacity." *In re Nicholson's Estate*, 93 P.2d 880, 883-84 (Colo. 1939) (citation omitted). Spendthrift provisions prevent a beneficiary's creditors from reaching trust assets and the beneficiary from alienating trust assets. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 3.

and (3) David's creditors could collect distributions from the Trust only after he received them following Janice's death.

¶ 9     In November 2024, the district court issued several orders. First, it granted the Bank's motion for a comfort order and payment instructions.  The court found that David pledged his interest in the Trust "to secure his indebtedness to the Bank," and the Bank's right to David's interest in the Trust was "the law of this case" because prior orders in the state and bankruptcy courts included it as collateral upon which the Bank was entitled to foreclose.[5]  The court then held that any distribution of the Trust's assets to which David was entitled was "res of this litigation" (assets) to be paid into the court registry.  Finally, it held that the bankruptcy stay relief

---

[5] Although the prior state court orders did not specifically address the Trust, the 2021 stipulated order allowed the Bank to foreclose on its interest in David's general intangibles, which the Bank argued included his interest in the Trust.  *See* § 4-9-309(13) & cmt. 7, C.R.S. 2025 ("[A]n assignment of a beneficial interest in a decedent's estate" is a type of security interest that perfects upon attachment.).

order was "res judicata" and that David was "judicially estopped from asserting any interest" in the Trust's income and principal.[6]

¶ 10 Next, the district court granted the Bank and the receiver's motion for "findings under the doctrine of res judicata" and to strike David's response for lack of standing. It found that David had a future beneficial interest in the Trust, which contained a valid spendthrift provision pursuant to section 15-5-502, C.R.S. 2025. Thus, it found that David "could not legally and, therefore, did not, validly assign his future beneficial interest in the . . . Trust to his creditors." But the court then seemingly concluded that — because David could not assign his interest in the Trust — he lacked standing to object to the Bank's requested relief. And it reiterated that the bankruptcy court's orders were "res judicata . . . for the reasons stated in the Bank's motion."

¶ 11 Finally, the court granted Sandra's motion for declaratory relief, making the following relevant declarations: (1) the Trust had

---

[6] The court also found that the "Lebsock Trustee and the Bank agreed that the Bank" could foreclose on David's interest in the Trust. However, the record does not support this finding. The settlement agreement was between the Bank and the bankruptcy trustee, not Sandra as trustee of the Trust. Sandra was not involved in the bankruptcy proceedings.

a valid spendthrift provision; (2) David could not and did not validly assign his interest in the Trust to the Bank; and (3) the Bank could collect Trust assets only from David directly and "only after a payment [was] made to him under the terms of the Trust." However, the same order reiterated the instruction requiring Sandra to pay David's portion of Trust income and principal into the court registry, and it restated the court's conclusions about res judicata and judicial estoppel.

¶ 12 Janice died in December 2024, triggering David's entitlement to one-third of the Trust's principal and remaining income.[7] The parties do not cite Janice's final will, but one of the district court's November 2024 orders stated that — pursuant to the will — David was entitled to one-third of the Trust assets and that Janice lacked capacity to change her will such that the Trust's distributions upon her death would be "fixed."

---

[7] Section 2.3 of the Trust required the trustee(s) to liquidate Trust real estate within six months from Janice's December 8, 2024, death.

¶ 13    David and Sandra appealed.[8]  Although they filed separate briefs, their arguments largely overlap.  First, they argue that the bankruptcy court's orders did not have a preclusive effect on the state replevin action.  David also contends that the district court erred by concluding that he lacked standing and that he was judicially estopped from asserting an interest in the Trust's distributions.  Finally, Sandra and David contend that the Trust's spendthrift clause prevented David from alienating his interest in the Trust during Janice's lifetime.  Thus, they argue that the court erred by ordering Sandra to pay David's share of the Trust's assets into the court registry.  The Colorado Bankers Association filed an amicus brief in support of the Bank, and the Colorado Bar Association's Trust & Estate Section filed an amicus brief in support of Sandra.

---

[8] Sandra also argues that the Trust was not a res of the replevin action.  We need not address this argument to conclude that the district court reversibly erred.

9

## II. Preliminary Analysis

### A. Issue and Claim Preclusion

¶ 14 Sandra and David contend that the district court erroneously applied res judicata to preclude David from asserting an interest in the Trust's assets.[9] We agree. Although the district court did not differentiate between issue and claim preclusion, the Bank raised both doctrines, so we consider each in turn. *See Foster v. Plock,* 2017 CO 39, ¶ 14 (explaining that "res judicata" has been used to describe claim and issue preclusion). Both types of preclusion present questions of law that we review de novo. *Id.* at ¶ 10; *Bristol Bay Prods., LLC v. Lampack,* 2013 CO 60, ¶ 17.

#### 1. Issue Preclusion

¶ 15 The doctrine of issue preclusion provides that — once an issue has been finally determined in one proceeding — "parties to this proceeding are barred from re-litigating that particular issue again in a second proceeding." *Foster,* ¶ 13. A party asserting issue preclusion must establish four elements:

---

[9] The Bank contends that Sandra did not preserve this argument, but David argued that res judicata did not apply, so we conclude we may consider the issue.

> (1) the prior proceeding was decided on a final judgment on the merits; (2) the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding.

*Id.* We conclude that issue preclusion does not apply here.

¶ 16    In bankruptcy cases, relief from the "automatic stay is not a final adjudication of a party's ownership interest in property because it requires a party to show only a colorable claim of a lien on estate property." *Garrett v. BNC Mortg., Inc.*, 929 F. Supp. 2d 1120, 1124 (D. Colo. 2013); *see also In re Fog Cap Retail Invs. LLC*, No. 22-1297, 2024 WL 659559, at *4 (10th Cir. Feb. 16, 2024) (unpublished opinion) (granting a stay relief order based on a settlement agreement is not an adjudication on the merits). Because the bankruptcy court "did not, and indeed, could not adjudicate the substantive merits" of the Bank's claim or David's defenses, its order was not a final judgment on the merits. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 35 (1st Cir. 1994).

¶ 17    Moreover, the bankruptcy stay relief order was premised largely on David's lack of standing to object. *See Batterman v. Wells Fargo Ag Credit Corp.*, 802 P.2d 1112, 1118 (Colo. App. 1990) (an order dismissing a suit for lack of standing is not a judgment on the merits). And the bankruptcy court never addressed whether Colorado law prevented David from validly assigning his interest in the Trust to the Bank. *See Reynolds v. Cotten,* 2012 CO 27, ¶ 10 ("If the identical issue has not actually been determined in a prior action, the analysis need proceed no further."). So the stay relief order was not a final judgment on the merits, and it did not adjudicate whether David validly assigned his interest (if any) in the Trust. *See Foster,* ¶ 13. Therefore, issue preclusion does not apply.

## 2.    Claim Preclusion

¶ 18    The doctrine of claim preclusion seeks to prevent "perpetual re-litigation of the same claim or cause of action," and it bars "a claim litigated in a prior proceeding from being litigated again in a second proceeding." *Id.* at ¶ 12. Claim preclusion applies if the following elements are met: "(1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions." *Id.* at ¶ 26.

Claim preclusion also bars parties from relitigating claims that were *or could have been* brought in the first proceeding. *Id.* at ¶ 29.

¶ 19     Our cases are unclear as to whether claim preclusion requires a final judgment *on the merits. Compare id.* at ¶¶ 13, 26 (omitting the merits requirement from the first element of claim preclusion without discussion), *with O'Neill v. Simpson,* 958 P.2d 1121, 1123 n.4 (Colo. 1998) ("[C]laim preclusion[] bars subsequent claims by identical parties based on the same claim for relief after there has been a final judgment on the merits."), *and Calvert v. Mayberry,* 2016 COA 60, ¶ 15 (same), *aff'd in part and rev'd in part on other grounds,* 2019 CO 23.

¶ 20     Even if our case law does not require a final judgment on the merits such that the bankruptcy court's stay relief order satisfies the first element of claim preclusion, we conclude that there is no identity of subject matter in the two cases. *See Foster,* ¶ 26. When assessing whether claims share identical subject matter, we consider "whether the same evidence would sustain both" even if "the two actions are different in form." *Id.* at ¶ 28 (citation omitted).

¶ 21     To understand whether the two proceedings share identical subject matter, we must consider the scope of a proceeding to lift a

13

bankruptcy stay.  When a bankruptcy court lifts the automatic stay, the parties may "proceed to seek a determination of their substantive rights in the state court."  *In re Roberts*, 367 B.R. 677, 687 (Bankr. D. Colo. 2007).  The question of whether a creditor can foreclose on collateral is a "matter[] of Colorado state law," and an order lifting a stay in a bankruptcy proceeding does not alter "the legal rights and obligations that either the [creditor] or the [d]ebtor have under state law."  *Id.*  Rather, relief from stay in a bankruptcy proceeding "frees the parties to enforce their rights in the state court."  *Id.*

¶ 22    Thus, "stay proceedings only determine whether the party seeking relief has a 'colorable claim,' which is then fully adjudicated in the state court."  *In re Thomas*, 469 B.R. 915, 922–23 (B.A.P. 10th Cir. 2012) (citation omitted).  And whether a creditor may foreclose on collateral is a "question[] of state law beyond the scope of whether [the] Bank had a 'colorable claim' of a lien on the property."  *Garrett*, 929 F. Supp. 2d at 1125 (concluding that a bankruptcy court's order lifting the automatic stay did not preclude litigation of a bank's standing to foreclose on real property).

¶ 23    When the bankruptcy court lifted the stay, it implicitly

determined that the Bank had a "colorable claim of a lien" on

David's interest in the Trust.  *Id.* at 1124.  This was not the same

question as how the Trust's spendthrift provision — under Colorado

law — affected the Bank's purported security interest in David's

interest.  And the "appropriate place for a full and final adjudication

of the parties' respective interests in the [Trust] [was] the [Colorado]

courts."  *Thomas*, 469 B.R. at 923.

¶ 24    These cases establish that there is a difference between the

evidence necessary to show a colorable claim of a lien and the

evidence necessary to show a valid, enforceable security interest.

*See Foster*, ¶ 28.  And the state court generally considers the latter

question.  *See Roberts*, 367 B.R. at 687; *Thomas*, 469 B.R. at 923.

Thus, the ultimate validity of the Bank's security interest in the

Trust's assets was not before the bankruptcy court in the stay relief proceeding.[10]  Therefore, claim preclusion does not apply.

¶ 25    For the foregoing reasons, the district court erred by concluding that the bankruptcy court's stay relief order precluded David from arguing that the Trust's spendthrift provision invalidated the Bank's security interest in the Trust's assets.

### B.    Standing

¶ 26    The district court did not explain why it found that David lacked standing to object to the Bank's motion for a comfort order and payment instructions.  The court seems to have generally accepted the Bank's arguments without further analysis, so we presume it accepted the Bank's contentions that the bankruptcy court's standing analysis applied to the replevin action and that David surrendered his interest in the Trust to the bankruptcy trustee.

---

[10] The Bank also argues that claim preclusion applies because David *could* have raised the spendthrift provision issue in bankruptcy court.  There, David argued that the Bank's security interest was invalid because any such interest was contingent on Janice's will.  He thus questioned the validity of the Bank's security interest in the Trust, but the bankruptcy court did not address his challenge.

¶ 27      Standing is a question of law that we review de novo. *Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 23. In Colorado, we broadly construe standing. *Id.* at ¶ 25. "To establish standing, the *plaintiff* must have (1) suffered an injury in fact (2) to a legally protected interest." *Id.* (emphasis added). Federal Article III standing is narrower than standing under Colorado law. *See Grossman v. Dean*, 80 P.3d 952, 959 (Colo. App. 2003). And as explained above, prudential bankruptcy standing is even narrower than Article III standing. *Cult Awareness Network, Inc.*, 151 F.3d at 607.

¶ 28      But regardless of the scope of each type of standing, "traditional standing principles do not apply to defendants." *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1182 (Colo. 2003). "[O]nce the plaintiff has established standing and the defendants have been haled into court . . . , the only role for the defendants is to defend against the suit." *People ex rel. Simpson v. Highland Irrigation Co.*, 893 P.2d 122, 127 (Colo. 1995).

¶ 29      We are unaware of any authority requiring defendant-debtors in Colorado replevin actions to have standing similar to that required of state court plaintiffs or federal bankruptcy debtors. And the cases the Bank cites are distinguishable. First, a division of

17

this court held that a *plaintiff-creditor* lacked standing to sue shareholders, officers, and directors of a bankrupt corporation. *First Horizon Merch. Servs., Inc. v. Wellspring Cap. Mgmt., LLC*, 166 P.3d 166, 172, 179 (Colo. App. 2007). The division explained that when a creditor alleges only indirect harm — an injury deriving from harm to the debtor — "and the debtor could have raised a claim for its direct injury . . . , then the cause of action belongs to the [bankruptcy] estate." *Id.* at 180. Because the creditor brought claims that "directly injured the [debtor] corporation, but only indirectly injured the creditor," the creditor lacked standing. *Id.* at 179-82 (citation omitted).

¶ 30    Similarly, in *Summers v. Perkins*, 81 P.3d 1141, 1142-43 (Colo. App. 2003), a division of this court concluded that only the bankruptcy trustee, not a plaintiff-creditor, had standing to bring a fraudulent conveyance claim once the debtor filed for bankruptcy. Neither case required the defendant-debtor to show standing.

¶ 31    The Bank also relies heavily on the principle that "[o]nly the bankruptcy trustee has standing to assert claims that are the property of the bankruptcy estate." *Id.* at 1142. But "[u]nder [11 U.S.C.] § 541(c)(2), an anti-alienation provision in a valid

18

spendthrift trust . . . is an enforceable 'restriction on the transfer of a beneficial interest of the debtor,' thereby excluding the trust assets from the bankruptcy estate." *In re Coumbe,* 304 B.R. 378, 382 (B.A.P. 9th Cir. 2003); *see In re Amerson,* 839 F.3d 1290, 1300 (10th Cir. 2016) (recognizing that valid spendthrift trust funds are not property of the bankruptcy estate); *In re Alagna,* 107 B.R. 301, 307 (Bankr. D. Colo. 1989) (same). Therefore, even if we accepted the Bank's argument that defendant-debtors must establish standing (which we do not), the spendthrift provision excluded the Trust from the bankruptcy estate.

¶ 32      Finally, because bankruptcy standing principles do not apply to defendant-debtors in state court, we reject the Bank's argument that the bankruptcy standing order had a preclusive effect in the replevin action.

## C.    Judicial Estoppel

¶ 33      Without analysis or citation, the district court held that David was "judicially estopped from asserting an interest in . . . principal and net income allocated for distribution to [him] or to those who would take per stirpes if" he predeceased Janice. The court apparently accepted the Bank's argument that David could not

claim an interest in the Trust because, in the 2021 stipulated order, he agreed to the Bank's possession of his general intangibles, which the Bank argued included his interest in the Trust. We conclude that the court erred by invoking judicial estoppel.

¶ 34 Judicial estoppel is an equitable doctrine, *Est. of Burford v. Burford*, 935 P.2d 943, 947 (Colo. 1997), so we review the district court's application of judicial estoppel for an abuse of discretion, *see Lewis v. Lewis*, 189 P.3d 1134, 1140-41 (Colo. 2008).

¶ 35 "Judicial estoppel is a narrow doctrine that precludes a party from taking a position in a proceeding that is totally inconsistent with a position the party took earlier in the same or related proceeding in an intentional effort to mislead the court." *Tuscany Custom Homes, LLC v. Westover*, 2020 COA 178, ¶ 35. The doctrine applies only when (1) two positions are taken by the same party or parties in privity with each other; (2) the two positions are taken "in the same or related proceedings"; (3) the party was "successful in maintaining the first position and . . . received some benefit in the first proceeding"; (4) the inconsistency is "part of an intentional effort to mislead the court"; and (5) the two positions are "totally inconsistent — that is, the truth of one position must necessarily

preclude the truth of the other." *Burford*, 935 P.2d at 948. Finally, judicial estoppel "normally applies to inconsistent factual positions rather than legal positions." *Arko v. People*, 183 P.3d 555, 560 (Colo. 2008).

¶ 36    Here, even assuming the first three elements are met, the Bank failed to establish the final two elements. *See Burford*, 935 P.2d at 948. First, in the 2021 stipulated order, David conceded that the Bank had a security interest in his general intangibles, but his interest in the Trust had not been raised at that point in the proceedings. So there was no evidence that David sought to mislead the court by initially agreeing that he validly assigned his interest in the Trust and then later arguing that any such assignment was invalid.

¶ 37    Additionally, David's stipulation to the Bank's interest in his general intangibles did not necessarily preclude his argument that the spendthrift clause prevented him from assigning his future interest in the Trust. *See id.* David did not first agree to the Bank's taking possession of his interest in the Trust and later argue that he never made such an agreement; he contended that, *despite* his stipulation, the agreement was invalid under the Trust's spendthrift

21

provision. And David never argued that he could (or did) validly alienate his interest in the Trust. Finally, the argument that he could not validly assign his interest was a legal position to which judicial estoppel does not usually apply. *See Arko*, 183 P.3d at 560.

¶ 38 For these reasons, the district court abused its discretion by applying judicial estoppel to prevent David from asserting an interest in the Trust.

## III. Trust Analysis

¶ 39 We now address the parties' arguments about whether David could validly assign his interest in the Trust to the Bank. We conclude that the spendthrift provision prevented him from alienating his interest in the Trust before Janice's death. Therefore, the district court erred by ordering Sandra to pay any portion of the Trust assets into the court registry.

## A. Standard of Review

¶ 40 We interpret de novo the language of a trust and the law governing it. *See In re Marriage of Blaine*, 2021 CO 13, ¶ 14. Likewise, whether a valid spendthrift provision protects trust funds from garnishment is a question of law subject to de novo review. *See Casey v. Colo. Higher Educ. Ins. Benefits All. Tr.*, 2012 COA 134,

22

¶ 20, *abrogated on other grounds by*, *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46; *see also In re Maxwell*, 2026 COA 10, ¶ 25 (When the controlling facts are undisputed, the "legal effect of those facts constitutes a question of law." (citation omitted)).

### B.    Trust Law

#### 1.    Protection Afforded by Spendthrift Provisions

¶ 41    Except as provided in section 15-5-504, C.R.S. 2025, and to the extent a beneficiary's interest is not subject to a spendthrift provision, the court may authorize a creditor or assignee of the beneficiary to attach present or future trust distributions to or for the benefit of the beneficiary. § 15-5-501, C.R.S. 2025. The court may limit the award to such relief as appropriate. *Id.*

¶ 42    But Colorado law recognizes an exception for valid and enforceable spendthrift trusts.[11] Under section 15-5-502(3), "[a] beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and, except as otherwise provided [by

---

[11] A settlor cannot create a valid spendthrift trust for his or her own benefit. § 38-10-111, C.R.S. 2025; *see In re Cohen*, 8 P.3d 429, 432-33 (Colo. 1999).

statute], a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the beneficiary."

¶ 43    A spendthrift provision is created when a trust provides that the beneficiary's interest is held subject to a "spendthrift trust" or uses similar language sufficient to restrain voluntary and involuntary transfers.  § 15-5-502(1)-(2).  And funds under the discretionary control of a trustee subject to a spendthrift provision cannot be garnished.  *In re Estate of Beren*, 2013 COA 166, ¶ 31.  The trustee necessarily decides how much, if any, of the trust assets are used to benefit the beneficiaries.

2.    Limited Exceptions Allowing Creditor Access

¶ 44    Although they are not at issue here, there are specific and limited exceptions to Colorado's spendthrift protection.  Section 15-5-503(2), C.R.S. 2025, makes spendthrift provisions unenforceable against (1) a child who is an obligee pursuant to a child support order for which the beneficiary is the obligor and (2) a judgment

creditor who has provided essential services for the protection of a beneficiary's interest in the trust.[12]

### 3. Distributions Received or Overdue

¶ 45 But once trust funds have been distributed to the beneficiary, they are within the reach of creditors. *Beren*, ¶ 31; *see* Restatement (Third) of Trs. § 58 cmt. d(2) (A.L.I. 2003). Relatedly, section 15-5-506(2), C.R.S. 2025, provides that even if a trust contains a spendthrift provision, a creditor or assignee may reach a mandatory distribution of income or principal — including a distribution upon the trust's termination — if the trustee has not made the distribution within a reasonable time after the designated distribution date.

### C. The Trust Contained a Valid Spendthrift Provision

¶ 46 Recall that Janice specified in section 4.2 of the Trust that all "principal and income shall, until actual distribution to the [b]eneficiary, be free of debts, contracts, alienations, and anticipations of any beneficiary, and the same shall not be liable to

---

[12] Claimants may obtain a court order attaching present or future distributions to or for the benefit of the beneficiary, with the court having discretion to limit relief as appropriate under the circumstances. § 15-5-503(3), C.R.S. 2025.

any levy, attachment, execution, or sequestration while in the possession of the Trustees."

¶ 47     Given this key provision, we agree with the district court that David "could not legally and, therefore, did not, validly assign his future beneficial interest" in the Trust to his creditors. We cannot, however, endorse the district court's conclusion that the bankruptcy court's orders operated as res judicata in the state court replevin action and allowed the Bank preferential access to David's "beneficial interest" in the Trust. The district court's conflicting conclusions about the Bank's ability to reach David's purported interest in the Trust are irreconcilable and do not comport with Colorado law. *See* § 15-5-502; § 15-5-504; *In re Marriage of Smith*, 2024 COA 95, ¶¶ 19-29.

¶ 48     In allowing the Bank to access David's purported "interest" in the Trust to satisfy David's indebtedness to the Bank, the district court disregarded the dictates of sections 15-5-504(2) and 15-5-502. Indeed, nowhere in the court's order does it acknowledge either section of the Colorado Uniform Trust Code.

¶ 49     Nor did the district court explain how it could find the Trust's spendthrift provision valid while simultaneously allowing the Bank

26

to preferentially invade the Trust's funds contingently reserved for David. *See People v. D.F.*, 933 P.2d 9, 15 (Colo. 1997) (recognizing that appellate courts are not bound by lower courts' legal conclusions); *Maxwell*, ¶ 25. An appellate court decides de novo "whether the trial court's legal conclusions are supported by sufficient evidence and whether the trial court applied" the correct legal framework. *People v. Kazmierski*, 25 P.3d 1207, 1210 (Colo. 2001); *see Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 5; *Maxwell*, ¶ 25.

¶ 50 That David may have broadly agreed that his general intangibles included his purported interest in the Trust does not allow the Bank to bypass trust law. The spendthrift provision prevented David from alienating his interest in the Trust to his creditors during Janice's life.

¶ 51 Thus, to the extent the bankruptcy court purported to allow the bankruptcy trustee to pursue all sources of security the Bank thought it had, the bankruptcy court's orders had no effect on nonparties, including Janice (while she was alive) and the trustees she designated under the Trust and her will (after Janice's death). *See* § 13-51-115, C.R.S. 2025 ("[N]o declaration shall prejudice the

rights of persons not parties to the proceeding."); *In re People in the Interest of S.A. v. B.A.*, 2022 CO 27, ¶ 30 (without personal jurisdiction over an individual or entity, a court cannot issue legally binding and enforceable orders); *Constr. Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562 (Colo. 1996) (a declaratory judgment action cannot bind nonparties).

¶ 52     Moreover, and as previously explained, had the issue been litigated in the bankruptcy case — and it was not — the bankruptcy court would have had to honor state law restrictions on the transfer of a claimed beneficial interests in a trust.[13]  *See* 11 U.S.C. § 541(c)(2); §§ 15-5-502(3), -504; *Amerson*, 839 F.3d at 1300; *Alagna*, 107 B.R. at 307; *see also* § 15-5-501 (a creditor may attach to present or future distributions owed to a beneficiary, but only to

---

[13] The Bank invokes provisions of the Uniform Commercial Code — Secured Transactions (UCC), §§ 4-9-101 to -809, C.R.S. 2025, to claim a superior interest in David's expectancy, but we apply the Colorado Uniform Trust Code (not the UCC) to determine the legal effect of a trust instrument.  *See Casey v. Colo. Higher Educ. Ins. Benefits All. Tr.*, 2012 COA 134, ¶ 20, *abrogated on other grounds by*, *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46, ¶ 20; *see also Delta Sales Yard v. Patten*, 892 P.2d 297, 298 (Colo. 1995) (a specific statute controls over a general statute if there is a conflict).

the extent that the beneficiary's interest is not subject to a spendthrift provision).

### D. The Bank's (and Other Creditors') Remedy

¶ 53 In remanding the case for the district court to give effect to our decision, we reiterate that the Bank cannot preferentially stake a claim in David's share of the Trust. However, once the trustee distributes David's share of Trust funds, the Bank and other creditors are similarly situated. If the Bank's (or the creditors') debt was not discharged in bankruptcy, they may hold claims that they can pursue against David individually once his distribution is made. *See Beren*, ¶ 31.

## IV. Disposition

¶ 54 We reverse and remand for the district court to give effect to our decision.

JUDGE KUHN and JUDGE SULLIVAN concur.